Ray M. TENNISON et al., Appellants,

v.

Peter Benny LETTO, Appellee.

No. 11798.

Court of Civil Appeals of Texas, Austin.

June 9, 1971.

Rehearing Denied June 30, 1971.

Brown, Kronzer, Abraham, Watkins & Steely, W. James Kronzer, Houston, Stovall & Wilhite, Houston, James B. Kershaw, Bastrop, for appellants.

Clark, Thomas, Harris, Denius & Winters, John Coates, Barry Bishop, Austin, for appellee.

PHILLIPS, Chief Justice.

This is a personal injury case arising out of a two-car collision occurring on a bridge or overpass near the City of Elgin.

Pursuant to a jury verdict a take nothing judgment was rendered against Appellants.

We affirm.

Appellants are before us on seven points of error, the first three points, briefed together. The first point complains of the answer to Special Issue No. 1 as being against the great weight and preponderance of the evidence, the second and third points being no evidence point and insufficient evidence point relative to the unavoidable accident issue no. 18. We overrule these points.

This accident occurred in the middle of a rainy afternoon in November. Appellant, his wife and three children were in the family automobile and were proceeding in an easterly direction on U. S. Highway 290. The Appellee was alone in his car driving in a westerly direction. The accident occurred on the bridge or overpass which was some 300 to 350 feet in length. This collision occurred near the western edge of the bridge.

Appellee had retrograde amnesia as a result of head injuries sustained by him in the accident, and had no recollection of the events immediately preceding the accident. He did recall that it was raining hard enough to require him to slow down, and he recollected that his reduced speed was approximately forty miles per hour. This was all he could remember.

Appellant stated that in view of the rain he was watching himself "pretty close, especially with my family in the car." He further testified that Appellee was "definitely on his side" (Appellant's) of the road as he entered the bridge abutments. According to Appellant, this was the position of the cars at the time of impact.

In answering Special Issue No. 1 the jury found that Appellee had not driven his automobile to the left of the center line and in answering Special Issue No. 18 the jury found that the collision was the result of an unavoidable accident.

There is sufficient testimony to sustain these answers.

In any event, judgment for Appellee was in order because Appellants, Plaintiffs below, failed to secure any jury findings of negligence on the part of Appellee and thus Appellants failed to meet their burden of proving actionable negligence. The jury's unavoidable accident finding is immaterial because of Appellant's failure to secure any jury findings upon which a judgment in their favor can be based.

In any event, there is scant evidence from the accident victims themselves other than Appellant's assertion that Appellee was over in the wrong lane at the time of impact.

Controverting this evidence is that of Appellee which presumably caused the jury to find that Appellant was on the wrong side of the road (Special Issue No. 8) but to refuse to find that he was negligent in driving partially to the left of the center of the road. This verdict is consistent and establishes that the jury, upon sufficient evidence, accepted Appellee's evidence and theory of the case.

None of the passengers in Appellant's vehicle witnessed the accident, and, as stated above, Appellant is the only witness who claimed to have any personal knowledge of the collision. He also suffered serious head injuries, was rendered unconscious, and did not regain his memory until well

over a month after the accident. He admitted that he didn't "remember too much of anything."

Appellee's case is largely predicated upon the testimony of Captain Charles H. Ruble, an accident reconstruction expert. Ruble's testimony comprises some sixty eight pages of the statement of facts. In summary, he visited the accident scene and made extensive measurements, observations and tests. He testified that the bridge or overpass upon which the collision occurred was "well traffic polished" concrete whereas the road leading to the bridge was "quite textured" asphalt. That Appellant approaching from the west, encountered a radical change in the surface of the roadway as it changed from textured asphalt to slick concrete, whereas Appellee, driving in a westerly direction, had been driving on the smooth concrete surface for over 300 feet.

Captain Ruble expressed the change in the road surface as a difference in the coefficient of friction. Using a friction block and a laboratory spring balance, he determined that the coefficient of friction on the asphalt road while it was wet was .65, whereas the concrete bridge showed a coefficient of friction of .50 when wet. A car entering the bridge from the west, as did Appellant's could not make the transition instantaneously, because the front wheels reach the smooth surface first. In addition, there was a change in elevation between the road and the bridge. These factors, in Captain Ruble's opinion, would affect the stability of Appellant's automobile.

Captain Ruble further testified that it was more likely that Appellant's car, rather than Appellee's, would lose control due to the change in the condition of the road, because the stability of Appellant's car had just been affected by the change in surface and elevation, while Appellee had been driving on the bridge for a period of time and had the opportunity to become stable on the slick surface. The significance of this conclusion is impressive, because the evidence establishing the angle of collision as approximately 45 degrees makes it clear that one of the vehicles was out of control at the time of the collision.

Captain Ruble testified that the angle of collision, gathered by his observation of the damage done to the automobiles involved and examination of photographs, established the position of the two vehicles at the moment of impact. The left front wheel of Appellee's car was driven back and to the right, and the angle of collision was from the left front. The left front wheel of Appellant's car was pushed back and to the left, thereby, according to Ruble, demonstrating the line of force and the relationship in which the two cars came together. In addition, the rear of Appellant's vehicle struck the bridge, according to the testimony of another witness arriving after the accident, and the Appellee's car struck the curb on its side almost broadside.

■ This evidence is sufficient to establish the conclusion that Appellant, not Appellee, was on the wrong side of the road at the moment of impact. As a result of this investigation Ruble testified that Appellant's car was angled at the point of impact or beginning to skid slightly.

It is, of course, the province of the jury to judge the credibility of the witnesses and the weight to be given their testimony. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (1952).

■ Appellant's fourth point of error, which we overrule is the error of the court in not granting a new trial because of the incurable side-bar remark of counsel for Appellee that counsel for Appellants, or "some friend of his" had planted or placed a safety manual in Appellant's vehicle just before a photograph was made.

The following exchange took place as counsel for Appellant offered one of a series of photographs into evidence.

"Q. Mrs. Tennison, I show you what has been marked as Plaintiffs' Exhibit Number 32 * * *

(Counsel handing Exhibit 32–P to the witness)

* * * and ask you if you can identify the vehicle depicted in that photograph, please?

A That was our car.

Q And I show you what has been marked as Plaintiffs' Exhibit Number 31 and ask you if you can identify this vehicle that's depicted in that?

A That's our car.

(Mr. Stovall handing Exhibits 31–P and 32–P to Mr. Coates.)

MR. COATES: (To the Court) Judge, I don't have any objections to these, except it seems like it's a strange coincidence that Mr. Stovall's picture has this little pamphlet in here * * *

MR. STOVALL: I'll prove that up later.

MR. COATES: * * * put out by some friend of his.

MR. STOVALL: And I object to that and I ask the Court to strike it from the record.

MR. COATES: Your Honor, it has * * *.

MR. STOVALL: And I ask the Court to instruct the jury to disregard the remarks of Mr. Coates.

THE COURT: Wait just a minute; I haven't even seen the picture, but let's just strike the remark from the record * * *

(To the Jury) * * * and Lady and Gentlemen of the Jury, you will disregard it.

(To Counsel) Go ahead, Counsel.

MR. COATES: I object to one picture, Your Honor, and I would like to approach the bench.

THE COURT: All right."

The manual in question was a "Mobil Oil Safety Manual."

Appellant asserts that the obvious import of opposing counsel's side-bar remarks was to suggest that it has been planted in the position photographed so as to convey to the jury an impression that Appellant was a very cautious man.

Counsel for Appellee was entitled to an objection to Appellant's exhibit which was a photograph of Appellant's wrecked car with a safety manual prominently displayed so that its title could be read by one viewing the photograph. Counsel's remark about its having been put there by some friend was improper, however, what harm it might have caused was cured by the judge's instruction to the jury to disregard. In Howsley & Jacobs v. Kendall, 376 S.W. 2d 562 (Tex.Sup.1964) the Court made the following statement:

"We need not discuss the matter of improper argument at great length. We are fully cognizant of the fact that a trial before a jury in Texas is an adversary proceeding. Perhaps the lawyer who, in the heat of advocacy, has never made a remark that would call for a reversal of a judgment has not tried many closely contested cases. However, it is not the attitude, purpose, or motive of counsel that is of controlling importance. The important considerations are what was said and how in all probability such statements were understood by the jury."

■ At the hearing on a motion for new trial testimony was developed from one of the jurors that the jury "meant for Mr. Tennison to get the money." Consequently the remark of counsel proved harmless. Tex.Rules Civ.Proc. 434.

Appellants' fifth point of error, which we overrule, is that of the trial court in permitting a portion of Appellants' original petition to show that counsel for Appellants had baselessly charged Appellee with neg-

ligence at the time when the only eye witness, Ray M. Tennsion, had not regained his conscious memory of the occurrence.

■■ Abandoned or superseded pleadings may be introduced when they contain admissions or declarations against interest, 24 Tex.Jur.2d, Sec. 631, p. 205; however, the pleading introduced here, over objection, was not material to either of these purposes. While its admission was error under this record, in viewing this record as a whole, it was not such error that in our opinion "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case * * * " Tex.Rules Civ.Proc. 434.

■ Appellants' sixth point of error, which we overrule, is the error of the court in refusing to grant a new trial because of the incurable, improper and harmful jury argument concerning appellee's counsel's own investigation of the accident, which allegedly required him to employ an expert to go to the scene and not "make up a bunch of lies."

This was a vigorously contested lawsuit with experienced and able counsel on both sides. The statement of facts comprises 510 pages with another 124 pages of recorded arguments. At the time Appellee's counsel made the above mentioned remark he was answering Appellants' counsel's argument which described Appellee's witness Ruble as a "hired gun" and stated in no uncertain terms the belief that Captain Ruble's conclusions were the result of his employment by Appellee rather than the product of his investigation. Counsel for Appellants showed no hesitancy in referring repeatedly to Captain Ruble's hourly fees, as his "mileage meter," and that "it takes big money" to hire him as an investigator.

Improper argument can be invited by argument of opposing counsel. Texas Sand Co. v. Shield, 381 S.W.2d 48 (Tex. Sup.1964); Fort Worth & Denver Ry. Co. v. Coffman, 397 S.W.2d 544 (Tex.Civ.App. Fort Worth, 1965, writ dism.). Such was the case here.

Appellants' seventh point, which we overrule, is the error of the court in failing to grant a new trial because of the misconduct of the jurors in wrongfully considering the effect of their answers in arriving at the findings to Special Issues Nos. 1, 8 and 18.

■ The record on motion for new trial includes the testimony of one juror that statements were made concerning the effect of the "unavoidable accident finding," that "some made the statement that he wouldn't get the money, and some said he would."

There is no evidence in the record that any juror's answer to the unavoidable accident issue was affected by these statements, and there is no evidence of any connection between these statements and the jury's answers to the primary and contributory negligence issues. It must be remembered that Appellants failed to secure any findings of primary negligence against Appellee. Thus the unavoidable accident issue becomes immaterial. Consequently Appellants cannot show material misconduct which probably resulted in injury. Fountain v. Ferguson, 441 S.W.2d 506 (Tex. Sup.1969).

The judgment of the trial court is affirmed.

ON MOTION FOR REHEARING

Appellants maintain that this Court has adopted an erroneous test of law in determining whether the evidence is factually insufficient to support the findings under attack and that it is necessary for the Court to determine whether the evidence is greatly outweighed by the other evidence in the record establishing the opposite conclusion. Fisher Construction Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126 (1959); Harrison v. Chesshir, 159 Tex. 359, 320 S.W.2d 814 (1959).

**292**

Our conclusion was, on weighing the testimony on each side of questions presented, that the evidence was sufficient to establish the findings reached by the jury. In other words, we concluded that the jury's findings on the issues in question are not contrary to the overwhelming weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S. W.2d 660 (1951); Tudor v. Tudor, 158 Tex. 559, 314 S.W.2d 793 (1958).

The motion for rehearing is overruled.