**Roger S. BRAUGH, Appellant,**

v.

**Kathleen McGill ENYART, Appellee.**

**No. 13–82–151–CV.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1983.
Rehearing Denied Oct. 6, 1983 (overruled).

Ken Dahlberg, Wood & Burney, Corpus Christi, for appellant.

Schuyler B. Marshall, Thompson & Knight, Dallas, for appellee.

Before NYE, C.J., and UTTER and GON-ZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This is an appeal from a take nothing judgment rendered against appellant in a suit for breach of an option contract after a jury trial and from a money judgment rendered against appellant for slander. Appellant alleges error in rendering the take nothing judgment, in the admission of a deposition, in the selection of the jury and in granting appellee the judgment for slander. We affirm the take nothing judgment on the option contract and reverse and render a take nothing judgment on the slander cause of action.

### Facts

Appellant and appellee were divorced in September 1980. After a bitter and prolonged divorce proceeding, the parties entered into a property settlement agreement wherein appellant was given an option to purchase certain horses which were awarded to appellee. The basis of appellant's suit against appellee was his contention that he had properly exercised the option and that appellee was refusing to honor it. Appellee counterclaimed for slander against appellant. Based on answers to special issues, the trial court entered the above mentioned judgment. We will first consider the matter of the option contract.

### Option Contract

In points of error number 10, 18 and 19, appellant alleges that the trial court erred in the submission of the option contract issues to the jury and in failing to grant his Motion for Judgment N.O.V. since "as a matter of law, appellant properly exercised his option." The pertinent part of the settlement agreement provides:

"14. It is agreed that the Respondent [appellant] shall have the right to purchase on or before December 15, 1980 for cash any of the horses listed in Plaintiff's Exhibit # 10 at the value stated in said inventory ... by notifying Petitioner in writing by certified mail of his electing to purchase such horses. It is further agreed that Respondent, in addition to paying the cash purchase price for such horses, will pay any reasonable boarding fees for such horse and any reasonable training bills which have incurred to the account of the horse during the interim of time from the date of judgment to December 15, 1980."

The letter, dated December 10, 1980, which appellant sent to exercise his option reads in part:

"Dear Mrs. Braugh,

Pursuant to paragraph 14 ... you are hereby given notice that I intend to exercise my right to purchase *all* of the horses which I have not already noticed and purchased.

\* \* \* \* \* \*

Please have your attorney, Mr. Richard Stone contact Mr. George Shaffer about how and when the money is to be paid ...."

In answer to special issues, the jury found that: 1) on December 12, 1980, appellant mailed a certified mail letter; 2) said letter was received by appellee on December 16, 1980; 3) appellee first received a copy of the letter on December 14, 1980 by means other than certified mail; 4) between December 12, 1980 and December 15, 1980 appellant did not have the cash money necessary to pay for the horses; and 5) that appellant had not tendered any cash to appellee to pay for the horses before midnight, December 15, 1980. Based upon these answers, the trial court entered a judgment that appellant take nothing in his cause of action.

Appellant argues that since appellee received a copy of his letter prior to December 15, 1980, albeit not by certified mail, he properly exercised his option to buy the horses. We do not agree. The terms of the agreement between the parties specifically required two conditions to be met in order for the option to be exercised: 1) the purchase on or before December 15, 1980 *for*

*cash;* and 2) notification in writing by certified mail by December 15, 1980. Thus, the option required both notice *and* the tender of cash on the same date. In 6 Williston on Contracts § 853 (3d ed. 1962) it was noted:

"But an option may require both that notice of intention to exercise the option be given within a specified time and also that the performance be rendered by a certain date. In such a case failure to give such notice on time is fatal, as is the subsequent failure to render performance seasonably."

 In addition, it has been held that in the absence of equities, an optionee is held to strict compliance with the terms of an option agreement. *Zeidman v. Davis,* 161 Tex. 496, 342 S.W.2d 555 (1961); *Greenbaum v. Cortez,* 644 S.W.2d 510 (Tex. Civ.App.—Corpus Christi 1982, no writ); *White v. Miller,* 518 S.W.2d 383 (Tex.Civ. App.—Tyler 1974, writ dism'd). Acceptance of an option must comport and agree with the terms of the option and time is of the essence in option type contracts. Based on sufficient evidence, the jury found that no cash was tendered to appellee on or prior to December 15, 1980 and that appellee did not receive certified mail notice until December 16, 1980.

While it is generally recognized that the depositing of notice in the United States mail is sufficient to exercise acceptance, nonetheless, appellant did not tender cash before December 15, 1980 and thus failed to meet both requirements of the option contract. See *Franklin Life Insurance Co. v. Winney,* 469 S.W.2d 21 (Tex.Civ.App.—San Antonio 1971, writ ref'd n.r.e.).

The fact that appellant did not know the amount of breeding fees is of no consequence. The important element was the value of the horses which was well known to appellant. He should have tendered this amount in cash to appellee on or before December 15, 1980. Since neither terms of the option agreement were met, appellant's points of error number 10, 18 and 19 are overruled.

 We note that, even if the option contract could be construed to require only notification of appellant's election to purchase the horses, he would have been required to tender the cash within a "reasonable time" after that date. *Moore v. Dilworth,* 142 Tex. 538, 179 S.W.2d 940 (1944); *Wade Contractors Inc. v. C.W.A., Inc.,* 589 S.W.2d 505 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Appellant failed to plead or prove that he tendered the inventory price of the horses in the option contract within a reasonable time and, thus, would not be entitled to judgment as a matter of law.

### Juror Disqualification

In point of error 5, appellant asserts that the trial court erred in denying his motion for new trial based on juror disqualification. Appellant alleges that one of the jurors does not read or write English and thus does not meet the statutory requirements for a juror. Tex.Rev.Civ.Stat.Ann. art. 2133 (Vernon 1982).

Appellant's complaint was raised for the first time after the verdict was rendered and upon hearing of his motion for new trial. Appellant failed to have the jury voir dire transcribed and thus we are unable to determine what questions were presented to the juror.

At the hearing on the motion for new trial, the juror testified (without an interpreter) that he could not read and write in English but that he could understand it. Sometime after the hearing, the trial judge filed a "bill of exception" in which he stated that prior to the time the charge was submitted to the jury, he mentioned to counsel for both sides that he questioned whether a juror could sufficiently understand or speak English but that no objections were made or further questions raised concerning this matter.

 Objections going to the qualification of a juror shall be made before the return of the verdict. *Herrin Transp. Co. v. Peterson,* 216 S.W.2d 245 (Tex.Civ.App.— Galveston 1948, writ ref'd n.r.e.); *Travelers' Ins. Co. v. Peters,* 3 S.W.2d 568 (Tex.Civ.

App.—Beaumont 1928), aff'd, 17 S.W.2d 457 (Tex.1929). The purpose of the rule is so that a party to a suit may not conceal his knowledge of the disqualification and take a chance on a verdict in his favor and if the verdict is against him, take advantage of the irregularity by obtaining a new trial. *Herrin,* supra. In our case, appellant's counsel could have objected to the juror when the trial court brought the matter to his attention. He chose not to and he cannot now be heard to complain. Appellant's point of error 5 is overruled.

### Deposition

In his first point of error, appellant alleges that the trial court committed error in admitting the deposition of Martin Wygod because the deposition "was neither taken, subscribed to, changed, or returned into court in accordance with the Texas Rules of Civil Procedure."

Tex.R.Civ.P. 198, provides:

"Return of Depositions—... If not sent by mail, the person delivering them into court shall make affidavit before the clerk or justice that he received them from the hands of the officer before whom they were taken that they have not been out of his possession since, and that they have undergone no alteration."

The record shows that the deposition of Martin J. Wygod was taken in New York City on November 5, 1981. The court reporter delivered it to an attorney in New York City who in turn delivered it to Federal Express. Federal Express delivered it to the law offices of Richard Stone in Corpus Christi and it was taken to appellee's attorney in Sarita, Texas, whereupon he filed it with the District Clerk on November 9, 1981, the date the trial commenced. Appellant objected to the admission of the deposition on the grounds that the chain of custody did not comply with Tex.Rev.Civ.P. 198, that there were unauthorized changes in the deposition and that since Wygod did not sign it in the presence of the deposition officer, but rather before another notary, it was error for the court to admit it.

In an affidavit filed with the trial court upon the offer of the deposition, appellee's attorney stated that at the time it was delivered to him, the Federal Express envelope was unopened and had undergone no alterations. The court and the parties conducted a page by page examination of the deposition and the trial court sustained all objections to the deposition where there had been any changes.

There have been no allegations of fraud made in connection with the taking and the delivery of the deposition nor has appellant shown any harm. We find that the return of the deposition was in compliance with the intent and spirit of Rule 198, Tex.R. Civ.P. The deposition was properly admitted. Even if erroneously admitted, the error was harmless. Appellant's first point of error is overruled. See *Utilities Indemnity Exchange v. Burks,* 7 S.W.2d 1112 (Tex.Civ. App.—San Antonio 1928, writ dism'd); *United Producers Pipe Line Co. v. Lantry Fike Const.,* 238 S.W. 331 (Tex.Civ.App.— Fort Worth 1921, writ dism'd).

### Slander

In points of error 2, 6, 7, 8, 11 and 12, appellant asserts that the trial court committed error in submitting special issues regarding slander to the jury because there was no pleading or proof of special damages.

Appellee relied on the Wygod deposition testimony to establish the slander. Wygod testified that he was in the business of raising and breeding thoroughbred horses, and that he had known appellee for approximately three and a half years. He met appellant for the first time in January 1981 on the date the alleged slanderous statements were made. Wygod is also a broker and at the time he met appellant he was a sales agent for appellee attempting to sell some of the same horses appellant was claiming under the option contract. Upon being asked what was said, Wygod testified:

"A. Yes, he told me that Mrs. Enyart, formerly Mrs. Braugh, had ruined him financially, that she was a liar, and that

she was trying to perpetrate a fraud, that he was the legal owner of the mares that I was to auction off at this auction that was suppose to take place in a few days."[1]

Generally, there are two types of oral defamatory language: 1) that which is actionable in itself without any allegations and proof of special damages and 2) that which is actionable only on allegations and proof of special damages. *Bayoud v. Sigler,* 555 S.W.2d 913 (Tex.Civ.App.—Beaumont 1977, writ dism'd); *Sterns v. McManis,* 543 S.W.2d 659 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ dism'd). Although defamatory language may tend to expose one to public hatred, contempt or ridicule, it is not actionable in itself *unless* it imputes to another the commission of a crime or affects a person injuriously in his office, business, profession or occupation, or unless it falsely and maliciously imputes unchastity to a female. *Buck v. Savage,* 323 S.W.2d 363 (Tex.Civ.App.—Houston [1st Dist.] 1959, writ ref'd n.r.e.); *Billington v. Houston Fire & Casualty Insurance Co.,* 226 S.W.2d 494 (Tex.Civ.App.—Ft. Worth 1950, mand. overr.). If words are clearly actionable in themselves, the court should instruct the jury that such is so as a matter of law and not leave that determination to the jury. *Sterns,* supra.

Appellee contends that the words used in this case are actionable in themselves in that they affected her injuriously in her office, business, profession or occupation. In order to prevail under this exception, however, the words spoken *must* "touch" her in some way that is harmful to one engaged in her particular office, business, profession or occupation. *Buck,* supra.

The Restatement (Second) of Torts § 573 (1971), discusses slanderous imputations affecting conduct of business, trade or profession. Under the topic "General Disparagement," page 181, it says:

"Disparaging words, to be actionable per se under the rule stated in this Section, must affect the plaintiff in some way which is peculiarly harmful to one engaged in his trade or profession. Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession .... Thus, a statement that a physician consorts with harlots is not actionable per se although a charge that he makes improper advances to his patients is actionable; the one statement does not affect his reputation as a physician whereas the other does so affect it."

In 53 C.J.S. *Libel and Slander,* § 32, p. 78, it is said:

"The rule is that, in order to render language concerning one in a special character or relation actionable, it must touch him in that special character or relation. The words must have such a close reference to such relation or character that it can be said that they are defamatory by means of an imputation on one in that character, distinct from, and independent of, an imputation on him as an individual. In order to be actionable it is not sufficient that the words be merely injurious to one whatever his pursuit, but they must prejudice him in the special profession or business in which he is actually engaged...."

As we view the evidence, there are several reasons why the alleged slanderous statements do not fall within the rule which would make the defamatory words actionable in themselves.

First, it is questionable whether at the time of the occurrence in question, appellee was in the business, profession or occupation of selling thoroughbred horses. In our view, appellee was trying to pay off the debts she and her ex-husband incurred by selling the horses. There is nothing in the record to indicate that she had any intention of pursuing this business on her own after these horses were sold.

Second, even if appellee was in this business, the oral statements were not such as

---

1. In special issues 9 through 20, the jury found that appellant made these statements, that they constituted slander as defined by the Court, and that they were made with malice.

would affect one in the horse selling business any more than it would affect a person engaged in any other type of business, trade or profession.

Third, the words spoken should be viewed in the context in which they were said with due consideration to the source, the subject matter and the surrounding circumstances. In this case, the words were spoken by an ex-husband about his ex-wife after a bitter divorce proceeding to his ex-wife's friend and business associate about some horses that were the subject of a dispute between them. While the language was inappropriate and inexcusable, for all of the above reasons, we are not convinced that they were actionable in themselves. Since there were no pleadings and proof of special damages, appellant's points of error 2, 6, 7, 8, 11 and 12 are sustained.

Since the points of error we have addressed dispose of the appeal, it is not necessary to discuss the other points. Suffice it to say that we have considered them and they along with appellee's cross-points are overruled.

That portion of the judgment of the trial court which ordered appellant to pay to appellee $105,000.00 for her slander cause of action is REVERSED and judgment is here RENDERED that appellee take nothing. The trial court's take nothing judgment on the option agreement is AFFIRMED.