David BOLLING, Appellant,

v.

Rita BAKER, Appellee.

No. 04–82–00144–CV.

Court of Appeals of Texas, San Antonio.

Feb. 22, 1984.

Rehearing Denied April 9, 1984.

Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellant.

Bruce Robertson, Jr., Terri C. Peace, San Antonio, for appellee.

## OPINION

Before CADENA, C.J., and CANTU and DIAL, JJ.

CANTU, Justice.

This is a slander case. The appellee, Rita Baker, recovered judgment against the appellant, David Bolling, based upon a jury verdict. Appellant raises twelve points of error on appeal.

These points of error are: (1) the trial court erred in rendering judgment against appellant because a qualified privilege was established and the evidence is legally and factually insufficient to support the jury's finding of "knowledge of falsity or reckless disregard of the truth;" (2) appellant's requested definition of "reckless disregard" should have been submitted; (3) as a matter of law, the jury's finding of malice defined as "ill will" neither overcomes the qualified privilege nor justifies exemplary damages or alternatively, the evidence is legally and factually insufficient to support that finding; (4) evidence that appellant performed abortions was erroneously admitted and such was harmful; (5) the trial court erred in overruling appellant's objection to appellee's attorney's final argument which referred to appellant as "ashamed of his profession," and such error was harmful; (6) the trial court erred in excluding evidence that appellee had written bad checks; (7) the award of compensatory damages was error because the evidence is legally and factually insufficient to support findings that damages were sustained; (8) the jury's awards of compensatory damages are excessive and were influenced by passion or prejudice; (9) the trial court erred in failing to suggest a remittitur; (10) the award of exemplary damages was error because the evidence is legally and factually insufficient to support the jury's finding of malice as defined as "ill will"; (11) the jury's award of exemplary damages is excessive and influenced by passion or prejudice; and (12) the trial court erred in failing to suggest a remittitur.

A consideration of the questions involved in this case requires a recital of the evidence presented at the trial. The following is believed to be a fair summary of such evidence.

Appellant is a San Antonio physician engaged in the practice of obstetrics and gynecology. In May of 1979 he worked at the Women's Clinic Association at 401 West Summit. Appellant shared office space and expenses with two other physicians, Dr. Brown and Dr. Schanzer.

In May of 1979, appellee, a licensed vocational nurse, was interviewed and hired by appellant. She was assigned to work with appellant and her duties included working with the patients in the examination room—reviewing and completing each patient's chart by measuring blood pressure and weight, performing urine tests, and preparing the patient for other physical tests and examinations.

The statements about which appellee complains were the result of an incident that occurred at work on October 21, 1980. A patient came to see appellant. Appellee measured her weight and blood pressure and tested her urine. Appellee then saw a notation on the "Follow-Up Visits" portion of the patient's chart to "repeat rubella." Relying on this notation, appellee erroneously sent the patient to the lab where blood was drawn for a rubella test.

Appellee testified that she learned of the mistake from the lab technician, who told her the test had already been repeated. According to appellee, she then went to appellant to inform him of her mistake and he said, "That's fine." Later that day he asked her to bring him the chart which was now back in the front office with the receptionist and secretary. Appellee maintained that the reason for the mistake was because she had seen the lab slip with the notation "repeat rub" (repeat rubella test), dated 07/25/80, on the first page of the chart and had not looked at the lab slips which were deeper in the file and which revealed that the test had already been repeated.

Appellant testified that he learned of the mistake when he checked the patient's lab slips, which were attached to the "Lab Reports" part of the chart. According to appellant, the latest lab slip, dated 8/26/80, was on top and showed that the repeat rubella test had already been performed. He wrote "not necessary" on the "Follow-Up Visits" part of the chart. He then laid the chart on his desk. He testified that about ten minutes later, appellee came to him with the chart to explain her mistake. When he looked at the lab slips, he testified that they were in a different order from when he had previously seen them. According to him, the top lab slip was now the one dated 7/25/80 which ordered the repeat rubella test and it looked as if it had just been reglued to the chart.

Appellant demanded to know if appellee had changed the order of the slips, which she denied. Appellant then asked other office employees whether they had changed the order of the lab slips. No one knew anything about it. Appellant gave appellee a time limit to find out who had changed the slips. According to appellant, he gave appellee 24 to 48 hours to come up with an explanation. Appellee, however, claimed that he gave her until five o'clock, and said, "I don't care how you do it. I don't care if you point your finger at somebody. You finger somebody. You find out who did this, who changed this chart and you bring this person to me, if not, then I'll have to terminate you."

The appellee went around to all the other employees to see if one of them had changed the positions of the lab slips. No one could remember if they had or even if the order of the slips had changed. No one could say there had been a change except the appellant.

According to appellee, she was called into appellant's office at five o'clock that evening to see if she had found out who had changed the slips in the file. She said she had not and she was given until the next day to bring appellant the person who did it and if not, she would have to confess if she were to stay as an employee. Appellee testified that appellant said, "If you decide to stay, I'm going to ride your ass like you have never been ridden before. I'm going to watch over you and I'm going to make it difficult for you, if you decide to stay." The next day, appellant asked appellee to bring the transcript of her nursing school records, indicating that he wanted to see where she went to school and how much education she had.

The following day appellant once again called appellee into his office and questioned her about the patient's chart. Un-

able to come up with an explanation or the name of a person who changed the order of the slips, appellee was fired. That evening appellant called a staff meeting of the clinic's five office employees. Referring to appellee, appellant informed the employees that he could not work with anyone who was a liar, who was not trustworthy and was not loyal to his practice.

Appellee brought suit, alleging that appellant had falsely accused her of being dishonest. The case was tried and submitted to a jury which found that the statements made by appellant about appellee to the employees at the staff meeting were false,[1] that such statements were made with the knowledge that they were false or with reckless disregard for the truth, and that appellant was actuated by malice in making such statements.[2] The jury awarded appellee $65,000 in actual damages and $60,000 in exemplary damages. The trial court rendered judgment for appellee based upon these findings.

◼ In his first point of error, appellant asserts, and the appellee does not contend otherwise, that the statements were made under circumstances giving rise to a conditional or qualified privilege. There is no question but that the defense of common law conditional privilege can be overcome by a showing of actual malice. *See Dun and Bradstreet, Inc. v. O'Neil,* 456 S.W.2d 896, 900 (Tex.1970). Actual malice is defined as requiring a showing that the defamatory statement was made with knowledge that it was false or with reckless disregard of whether it was false or not. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Dun and Bradstreet, Inc. v. O'Neil, supra; El Paso Times, Inc. v. Trexler,* 447 S.W.2d 403 (Tex.1969).

◼ "Reckless disregard" requires proof that a false defamatory statement was made with a "high degree of awareness of [its] probable falsity." *Garrison v. Louisi-*

*ana,* 379 U.S. 64, 74, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964); *Foster v. Upchurch,* 624 S.W.2d 564, 566 (Tex.1981). There must be sufficient evidence to conclude that the defendant in fact entertained "serious doubts" as to the truth of the publication. *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968); *Foster v. Upchurch, supra,* at 566. The issue of actual malice was presented to the jury in the instant cause and was answered affirmatively. Appellant asserts that the evidence is legally and factually insufficient to support the jury's finding of actual malice.

In deciding the question of whether there is any evidence of probative force to support a finding, this Court considers only evidence and inferences tending to support the finding and disregards all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). In deciding whether the evidence is sufficient to support a finding, this Court considers and weighs all the evidence in the case and will set the finding aside if it is so against the weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

◼ Where an utterance is qualifiedly privileged the law presumes good faith and want of malice. *Jackson v. Cheatwood,* 445 S.W.2d 513 (Tex.1969). And if an action is based on a conditionally or qualifiedly privileged communication or statement, the plaintiff must show, to be entitled to recovery, that it was actuated, inspired or colored by actual or express malice, existing as a fact at the time of the publication, or by some evil motive or bad faith. *Cranfill v. Hayden,* 97 Tex. 544, 80 S.W. 609 (1904); *Nickson v. Avalanche Journal Publishing Co.,* 344 S.W.2d 749 (Tex.Civ. App.—Amarillo 1961, no writ). Once the conditional privilege is shown to exist the burden is on the plaintiff to show that the

---

1. Appellant does not challenge this finding.

2. "Malice" was defined for the jury without objection, as "ill will, bad or evil motives or such gross indifference to the rights of others as amounts to a willful or wanton disregard of the rights of others."

privilege is lost, that is, the plaintiff must then show malice. *Dunn and Bradstreet, Inc. v. O'Neil, supra.*

In cases involving qualifiedly privileged defamation, although the existence of actual or express malice is not presumed as a matter of law and must be proved, it need not be proved by direct or extrinsic evidence; its existence is sufficiently shown by evidence of facts and circumstances from which it is reasonably inferable. It may be inferred from the relation of the parties, the circumstances attending the publication, the language used, and from the words or acts of the defendant before, at, or after the time of the communication; but there must be evidence from which the jury can infer malice existing at the time of publication and actuating it.

36 TEX.JUR.2d 475, *Libel and Slander* § 149; *see Houston Belt and Terminal Railway Co. v. Wherry,* 548 S.W.2d 743, 754 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.), *cert. denied,* 434 U.S. 962, 98 S.Ct. 497, 54 L.Ed.2d 447 (1977). The jury, as the trier of facts in this case, could have reasonably inferred from the evidence presented that appellant's statements were actuated by actual malice.

Evidence was presented concerning the relation of appellee and appellant. Appellee testified that at first their relationship went well, but that appellant subsequently began asking her out socially. He would ask her in his office when there was nobody around. He would telephone her at her home at night, which caused her to remove her home telephone number from the employee roster at the clinic in the hopes that the calls would cease. He wrote her notes demonstrating his affection and sent her flowers. When appellee rejected appellant's invitations, he became angry and assigned her extra work projects. On one such occasion after appellee had turned down an invitation to go out with him, the appellant performed a "procedure"[3] in the office late at night and left the room in a particularly offensive state for the appellee to find and clean the following morning. This prompted one of the other physicians to call appellant in and state, "I don't know what your beef is with Rita. Why you're doing this. But I don't want you—this to happen again."

Evidence was presented revealing that appellee was considered to be a good and diligent worker who got along well with the patients. She was described as honest, generous, and well-liked by everyone. She was the type of person who would admit her mistakes. Appellant's deposition testimony was introduced in which he said appellee's work was good and her honesty unquestionable. At trial, however, he attempted to have the jury believe that her work was in some degree deficient and that he had prior doubts as to her honesty.

■ The appellant admitted that any-one of the employees could have put the lab slips in the chart. He said the slips had been changed; but he did not know who did it. He continually ordered appellee to find the person who had done it and even offered to give her a raise if she could "finger" another of the employees. These acts are not consonant with a belief that appellee was the guilty party. Lack of belief in the truth of the conditionally privileged communication is an important factor in determining malice in a defamation case. *See International & G.N. Railway v. Edmundson,* 222 S.W. 181 (Tex.Comm'n App. 1920, judgment approved); *Mayfield v. Gleichert,* 484 S.W.2d 619 (Tex.Civ.App.—Tyler 1972, no writ).

■ Appellant's obsession with such an insignificant event warrants the inference that he was using the incident to get even with appellee. When viewed in the light most favorable to the jury's verdict there is evidence of probative force to support the jury's finding that appellant made the statements with knowledge of their falsity

---

**3.** Appellee testified that an abortion was performed; appellant stated that the woman spontaneously miscarried.

**566**

or with reckless disregard for the truth. Furthermore, such finding is not so against the weight and preponderance of the evidence as to be manifestly unjust. We will not disturb this finding and appellant's point of error one is overruled.

■■■■ Appellant, in point of error two, submits that the trial court erred in denying his requested instruction defining "reckless disregard for the truth." In submitting the case to the jury, the court is required to submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict on the issues in the case. *See Houston National Bank v. Biber*, 613 S.W.2d 771, 775 (Tex. Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Roberts v. Bush*, 352 S.W.2d 337 (Tex.Civ.App.—Amarillo 1962, writ ref'd n.r.e.); TEX.R.CIV.P. 277. This rule gives the trial court considerable discretion in deciding what definitions are necessary and proper. A trial court is only required to submit definitions of legal and other technical terms. Any other definitions which do not aid the jury are not required. *Ortiz v. O.J. Beck & Sons, Inc.*, 611 S.W.2d 860, 868 (Tex.Civ.App.—Corpus Christi 1980, no writ); *Shihab v. Express-News Corp.*, 604 S.W.2d 204, 211 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.).

■■■ The trial court properly defined actual malice. A further definition of "reckless disregard for the truth" was not required. The trial court did not abuse its discretion in failing to submit the requested definition. Appellant's point of error two is overruled.

In his third point of error, appellant argues that the jury's finding of malice, defined as "ill will, bad or evil motives or such gross indifference to the rights of others as amounts to a willful or wanton disregard of the rights of others," will not overcome a qualified privilege and further, that such finding was not supported by the

evidence.[4] Because we have found the evidence sufficient to support the jury's finding of actual malice, we need not address this contention.[5] Appellant's point of error three is overruled.

In points of error four and five, appellant complains that the trial court erred in admitting evidence that appellant performed abortions and in overruling appellant's objection to appellee's attorney's final argument, which referred to appellant as "ashamed of his profession." Appellant asserts that the prejudicial effect of this evidence necessarily results from the fact that the morality of abortions is a controversial subject about which many people have strong attitudes, and that the prejudice was especially enhanced by the fact that seven members of the jury were Catholic, including a Catholic nun. One doctrine of Catholicism is that abortions are not permissible.

■■■ Appellant was called to the stand by appellee to testify as an adverse witness. He was asked where he now works and he gave the address of his office for his private practice of obstetrics and gynecology. He was then asked, "And what else do you—do you have some connection with an abortion clinic?" Appellant's attorney objected to the use of the term "abortion" as being inflammatory and prejudicial. The objection was overruled. Appellee's attorney proceeded:

Q: Is that what it is?

A: I do the full practice of obstetrics and gynecology.

Q: What is Aaron's Clinic? I understand your connection.

A: Aaron's Clinic is the clinic which is an educational facility and does do pregnancy terminations, and also has a nurse practitioner who works in the clinic to make sure we give birth control information and good guidance counseling for unwanted

---

4. Both "actual malice" and "ill-will malice" were submitted to and were found by the jury.

5. We express doubts, however, as to appellant's argument and refer him to Justice Cadena's

scholarly opinion in *Roegelein Provision Co. v. Mayen*, 566 S.W.2d 1, 9–12 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.).

pregnancies, as we do good procedures for pregnancy termination.

Q: You work two places; is that correct?

A: It's all the same.

Q: Is Aaron's Clinic in your office in Oak Hills Tower?

A: Yes, sir.

Q: I just wondered why you didn't use the name Aaron's Clinic. Do you have a clinic by that name?

A: There is a clinic by that name, and it is not listed in the Yellow Pages as an abortion clinic. It's Aaron's Women's Clinic.

Appellee's attorney was then permitted to use the phone book to determine that Aaron's Women's Clinic was listed under "abortion and abortion alternatives." Appellant objected as being "irrelevant to any issue in this case how it is listed." "It's based on a collateral matter. It has nothing to do with the issues involved." The objection was overruled.

It was permissible to ask appellant what business he was engaged in. Furthermore, the adverse party has the right to show the character of the witness' business or occupation. *See Missouri, K. & T. Railway Co. of Texas v. Calnon*, 50 S.W. 422, 424 (Tex. Civ.App.1899, writ ref'd).

■ During her testimony, appellee related the details of an incident that occurred some months before her termination. She testified that appellant had asked her out and following her refusal he performed an "abortion" in his surgical room late that night and had left it in a disgusting condition for her to find the next morning. This led to one of the other physicians calling appellant in and questioning him about his animosity towards appellee. This evidence was consonant with other testimony regarding the antipathy between appellee and appellant and was relevant on the issue of malice. *See Houston Belt and Terminal Railway Co. v. Wherry, supra.*

■ In any event, the error, if any, was waived when appellant's attorney chose to bring up the subject matter of abortions during final jury arguments. *Medina Electric Cooperative, Inc. v. Ball*, 368 S.W.2d 227 (Tex.Civ.App.—San Antonio 1963, no writ).

Appellant further complains of appellee's final argument *in rebuttal* in which he stated:

As to the fact of Dr. Bolling's profession, in what he does, it's the truth. What we heard was excuses for the truth. What he does is his own business, but if he is so ashamed of it, why does he do it? Why was his lawyer bouncing off the walls when the word was mentioned, if it's the truth and if it happened and it happened? Why are they so ashamed of it? It's merely the truth.

Appellant objected stating that the argument was inflammatory and irrelevant to any issue in the case. The objection was overruled.

Appellant's final argument, in part, was as follows:

There's one other that we've got to deal with. I think, maybe, it was more of a skunk hunt than a rabbit trail. You know, when a lawyer, fine lawyer spends his opening questions talking with an individual about his occupation and goes to the trouble to go to the Southwestern Bell telephone directory and to the green pages to find a listing of abortions so that he can point out to the Jury that the individual does, as among other things, pregnancy terminations, you have to be aware of the fact that this gentleman in all probability has looked up the Jury information list and secured that there's, at least, six of the Catholic faith on this Jury and that presumption would be, you would not find that to be appropriate and the presumption would further be, that perhaps, you would feel so strongly about that, that the Issues that the Court asked you about would be ignored. You can read this Charge from front to back and you're not going to find the word abortion in here. The only reason that was injected in there, I suggest to you,

was for the reason of attempting to cause you to feel malice towards David. And it didn't stop there. Rita gets on the witness stand what does she describe to you? A bloody operating room after she has been asked out and had denied it. I almost gained the impression from listening to her testimony that the lady thought that David had gone down on the street, solicited some pregnant women walking by or walking into the office room—

MR. ROBERTSON, JR.: (interjecting) Your Honor, there's no evidence whatsoever—

MR. BASHARA: I'm glad he admits that.

THE COURT: I don't recall any such evidence. However, he may draw reasonable inferences from the evidence that's in the record.

MR. BASHARA: And all of this now gets—now, all of this was because she turned him down for a date and, you know, it turns out—well, we asked Linda Bueno and thank goodness she was here, so we know the nurses are always charged with the responsibility of cleaning up an operating room. We put David on the stand. I would have proved it, if I had the medical records here. Another way that David stood to prove the incident was an emergency miscarriage was to have the lady here who had the procedure. What was the medical description? Again, the catch word which was used was abortion, bloody room and tools and fetus, then we retreated to procedure and tissue. I probably had spent too much time on this but I was sensitive to it. I was particularly sensitive when I feel it was given the prominence that it was. I suggest it will not be given any more prominence in this lawsuit. I just want to call your attention to and talk to you about what I think is fair in the matter and fairness in the matter is to deal with the Issues.

The complained of portion of appellee's argument in rebuttal was in response to appellant's argument.

Neither abortions nor appellant's profession was mentioned by appellee in her final argument to the jury. Nevertheless, appellant's attorney raised the issue in attempting to persuade the jury that appellee was improperly trying to influence the jury. It was only on rebuttal that appellee's attorney referred to appellant's profession.

Where jury argument is invited or provoked, it does not constitute error. *See Armellini Express Lines of Florida v. Ansley*, 605 S.W.2d 297 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Tennison v. Letto*, 469 S.W.2d 287 (Tex.Civ. App.—Austin 1971, writ ref'd n.r.e.). Appellant invited appellee's argument in this case. Appellant's point of error four and five are overruled.

Point of error six alleges that the trial court erred in excluding evidence that appellee had written bad checks. Several times during trial appellant's attorney offered evidence that appellee had allegedly written bad checks to local merchants and to the petty cash account at appellant's clinic. On cross-examination appellee was asked if a person who gave hot checks enjoys a good reputation for honesty. There was an objection which was sustained. On a bill of exceptions, appellee testified concerning two checks. She denied that the checks were bad and stated that her bank had made an error. She had no memory of having written any checks to the petty cash account which were returned for insufficient funds.

During the testimony of Linda Bueno, appellant's office manager, Bueno was asked whether there was a problem with appellee's checkwriting policy at the business. Appellee's attorney objected and the court sustained. No bill of exception was prepared on this witness and there is no evidence as to what her response would have been to this question. Appellant has waived any alleged error in the trial court's refusal to admit this testimony. *See Adams v. Thomas*, 638 S.W.2d 933 (Tex.Civ. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.).

At the termination of the trial, appellant's attorney perfected a bill of exceptions containing the testimony of two witnesses. Celia Travieso, appellee's co-worker, testified that she had not heard that appellee had passed checks to local merchants without sufficient funds to cover them. However, she did state that she had heard that appellee had passed a check on one occasion to the petty cash account without having sufficient funds. She stated that she did not have personal knowledge of this but had merely heard it from someone.

Linda Gutierrez, another of appellee's co-workers, testified that she had not heard that appellee had passed any bad checks. Appellant argues that this evidence is relevant to prove that the statements made by him were true, and that it was admissible on the issue of damages. We disagree.

■ Generally, relevancy of evidence is largely left to the discretion of the trial court. *See Charter Medical Corp. v. Miller*, 605 S.W.2d 943, 953 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). Appellant has the burden of demonstrating any harm resulting from the trial court's rejection of his evidence. His burden is to show that the exclusion was reasonably calculated to and probably did cause the rendition of an improper verdict. *Gonzalez v. Texas Department of Human Resources*, 581 S.W.2d 522 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.), *cert. denied*, 445 U.S. 904; TEX.R.CIV.P. 434.

■ Furthermore, under the general rule in civil suits, only testimony regarding "reputation" itself is admissible and specific acts of misconduct are not unless they involve a conviction of a crime involving moral turpitude. *See Compton v. Jay*, 389 S.W.2d 639 (Tex.1965); *Wolf v. Perryman*, 82 Tex. 112, 17 S.W. 772 (1891); *Express Publication Co. v. Isensee*, 286 S.W. 926 (Tex.Civ.App.—Austin 1926, no writ).

■ When examined, it is apparent that appellant's proffered evidence did not prove that appellee had been convicted of the crime of passing bad checks or that she was even guilty of such offense. Appellant's proof indicated only that some checks appellee had written had been returned due to bank error. The testimony of one witness that on one occasion she had heard that appellee had a check returned to the clinic's petty cash account was excludable as hearsay and its exclusion could not have reasonably caused rendition of an improper verdict. The trial court did not err in refusing the proffered testimony. Appellant's point of error six is overruled.

In points of error seven through nine, appellant alleges that the evidence is legally and factually insufficient to support the finding of actual damages, that the award of compensatory damages was excessive and influenced by passion or prejudice, and that the trial court erred in failing to suggest a remittitur.

The jury awarded appellee $25,000.00 for injury to her reputation, $20,000.00 for past mental anguish, embarrassment and humiliation, and $20,000.00 for future mental anguish, embarrassment and humiliation. Appellant argues that appellee in this case had to prove actual damages caused by the slander, which she failed to do. We are not persuaded that the position advocated by appellant represents the prevailing view in Texas.

Compensatory damages allowable for defamation are either general or special. General damages are those that naturally, proximately, and necessarily result from the libel or slander. The law infers or presumes them, and they are recoverable under a general averment and without proof that they have been incurred. They include injuries to character or reputation, injuries to feelings, mental suffering or anguish, and other like wrongs and injuries incapable of money valuation. General damages are neither remote nor speculative.

36 TEX.JUR.2d *Libel and Slander* 394–95, *General and Special Damages* § 94.

■ The common law of defamation traditionally has allowed recovery of purportedly compensatory damages without evidence of actual loss. If the statement is

"slanderous per se," the existence of some damage is presumed without proof that it has actually been sustained. *Maas v. Sefcik*, 138 S.W.2d 897, 899 (Tex.Civ.App.—Austin 1940, no writ); *see also Bell Publishing Co. v. Garrett Engineering Co.*, 141 Tex. 51, 170 S.W.2d 197, 203 (1943). Otherwise stated, proof of the defamation itself is considered to establish the existence of some damages, and the jury is permitted, without other evidence, to estimate their amount. Slander, to be actionable without proof of damage, has fallen into four categories: the imputation of crime, of a loathsome disease, those affecting the plaintiff in his business, trade, profession, office or calling, and the imputation of unchastity to a woman. *See* W. Prosser, Law of Torts § 112 (4th ed.1971).

In 1964, the United States Supreme Court, in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789, sought to restrict this common law rule of presumed damages. *Gertz* involved a private individual suing a newspaper publisher. The Court held that presumed damages are unconstitutional when liability is based on a standard of fault less than the actual malice standard. 418 U.S. at 349, 94 S.Ct. at 3011.

Subsequently, based upon *Gertz*, the Texas Supreme Court adopted a negligence standard of liability coupled with an actual injury requirement as applied to defamation suits brought by private individuals against media defendants. *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819 (Tex.1976); *see Durham v. Cannan Communications, Inc.*, 645 S.W.2d 845, 851 (Tex.App.—Amarillo 1982, writ dism'd). The Supreme Court has left unresolved the question of whether this actual injury requirement should be applied in cases where the actual malice standard is used and proved and in cases between two private individuals.

In *Houston Belt & Terminal Railway Co. v. Wherry*, 548 S.W.2d 743 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.), *cert. denied*, 434 U.S. 962, 98 S.Ct. 497, 54 L.Ed.2d 447 (1977), a private individual sued his non-media employer for libel. The court distinguished *Gertz* and *Foster* as applying only to media defendants, and held that where there is libel per se, injury to reputation is presumed, and with that injury presumed, mental anguish could be taken into consideration in awarding damages. *Id.* at 753. *But see Jacron Sales Co. v. Sindorf*, 276 Md. 580, 350 A.2d 688 (1976). The jury in *Wherry* found the existence of malice; malice being defined by the trial court as "[i]ll will, bad or evil motive, or such gross indifference to the rights of plaintiff as amounted to a willful or wanton act done intentionally and without just cause or excuse on the part of the party accused of such acts." [6]

In a conflicting opinion rendered by the El Paso Court of Civil Appeals the "actual injury" requirement was applied. *Ryder Truck Rentals, Inc. v. Latham*, 593 S.W.2d 334, 339 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.). *Latham* was a slander suit between two private individuals. The court refused to make the assumption, as did the Houston Court, that *Gertz* applied only to media defendants. The El Paso Court stated, "A review of the opinion in Gertz indicates that the restriction upon the award of damages in defamation cases was made to protect 'the vigorous exercise of First Amendment freedoms.' [Citation omitted]. Obviously, First Amendment freedoms include just as much the exercise of free speech as the right of freedom of press."

---

**6.** It can probably be said that most courts of appeals are still applying the common law rules of presumption of damages in cases of libel or slander per se. *See Braugh v. Enyart*, 658 S.W.2d 221, 226 (Tex.App.—Corpus Christi 1983, writ requested); *Rogers v. Doubleday & Co.*, 644 S.W.2d 833, 835 (Tex.App.—Beaumont 1982, writ granted); *Dolenz v. All Saints Episcopal Hospital*, 638 S.W.2d 141, 143 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.); *First State Bank of Corpus Christi v. Ake*, 606 S.W.2d 696, 702 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Bayoud v. Sigler*, 555 S.W.2d 913, 915 (Tex.Civ.App.—Dallas 1977, writ dism'd); *Stearns v. McManis*, 543 S.W.2d 659, 661 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ dism'd); *see also* 15 ST. MARY'S L.J. 197 (1983).

*Id.* at 338. Malice, defined exactly as in *Wherry*, was found by the jury.

■ The case at bar is distinguishable from both the *Wherry* and *Latham* cases, in that this case was submitted to the jury on the "actual malice" standard of liability—that is, with knowledge that it was false or with reckless disregard of whether it was false or not. We hold that in a case where "actual malice" is found the common law presumption of damages is still applicable where the statement is slanderous per se.[7] By prohibiting presumed damages in the absence of actual malice, the Court in *Gertz*, was attempting to eliminate motives for self-censorship, thus allowing the vigorous exercise of First Amendment freedoms.

■ The Court was attempting an equitable compromise between the competing concerns of the First Amendment and the State's interest in compensating private individuals for injury to reputation. However, in a case where a plaintiff proves that a false statement was made and that such a statement was made with knowledge of its falsity or with reckless disregard for its truth, the speaker or publisher forfeits the protections afforded by the First Amendment. *See New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Thus, the reasoning of *Gertz* becomes inapplicable in such a case.

We find in *Gertz* nothing to prohibit the application of our common law principles of presumed damages where statements are slanderous per se and made with actual malice. That brings us to the question of whether the statements made by appellant were slanderous per se.

■ Generally, spoken words imputing that a person is dishonest or unethical in the practice of his employment have been held to be actionable per se. *See West Texas Utilities Co. v. Willis,* 135 S.W.2d 138 (Tex.Civ.App.—Austin 1939), and on later appeal, 164 S.W.2d 405 (Tex.Civ.App.—Austin 1942, no writ); *Mayo v. Goldman,*

122 S.W. 449 (Tex.Civ.App.1910, no writ). Because the words spoken by appellant in this case imputed that appellee had been dishonest and deceitful in the practice of her employment, we hold that such statements were slanderous per se. Thus, general damages were recoverable without specific proof that they had been incurred where appellee proved actual malice.

■ With regard to the alleged excessiveness of the jury's verdict of compensatory damages, in defamation cases, the amount of damages is peculiarly within the province of the jury, and an appellate court will not disturb the verdict or award unless it appears from the record to be excessive or the result of passion, prejudice, or other improper influences. *See Winkel v. Hankins,* 585 S.W.2d 889, 900 (Tex.Civ.App.— Eastland 1979, writ ref'd n.r.e.); *Associated Press v. Walker,* 393 S.W.2d 671 (Tex. Civ.App.—Fort Worth 1965, writ ref'd n.r. e.). Damages sustained are purely personal and cannot be measured by any fixed rule or standard. *Whalen v. Weaver,* 464 S.W.2d 176 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ ref'd n.r.e.); *Associated Press v. Walker, supra.*

■ Since the law presumes such general damages as injuries to reputation and mental anguish, under the facts of this case we cannot say that the jury was not justified in awarding such. The award is not excessive. We have examined the record and have found no evidence that the verdict was a result of passion, prejudice, or other improper influence. Therefore, we affirm the award of compensatory damages. Appellant's points of error seven through nine are overruled.

■ Appellant's points of error ten through twelve complain of the jury's award of $60,000.00 as exemplary damages. As previously stated, appellee in this case presented sufficient evidence of actual malice. Such malice warrants the recovery of exemplary damages. *See A.H. Belo Corp. v. Rayzor,* 644 S.W.2d 71, 87 (Tex.

---

7. We do not address the issue of the proper standard of liability to be applied in cases

brought by private individuals against non-media defendants.

Civ.App.—Fort Worth 1982, writ ref'd n.r. e.).

 We hold that the $60,000.00 reward for exemplary damages in this case was not excessive. *See First State Bank of Corpus Christi v. Ake*, 606 S.W.2d 696 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Houston Belt & Terminal Railway Co. v. Wherry, supra.* Appellant's points of error ten through twelve are overruled.

The judgment of the trial court is affirmed.