Leroy **HOLT** et al., Appellants,

v.

Oran M. **PURVIANCE**, Appellee.

No. 15768.

Court of Civil Appeals of Texas.

Dallas.

May 19, 1961.

Rehearing Denied June 16, 1961.

Vactor H. Stanford, Dallas, for appellants.

Chester A. Oehler, Dallas, for appellee.

DIXON, Chief Justice.

Our former opinion is withdrawn and this opinion is substituted:

Earlier we dismissed this appeal because the judgment appealed from was not a final judgment in that it did not dispose of the suit as to one of the defendants, J. B. Holt.

On rehearing the parties with our permission have filed a supplemental transcript which contains an order nunc pro tunc showing that all parties defendant except Leroy Holt, doing business as Holt Brothers Builders, were dismissed from the suit at a time antedating the entry of judgment on November 12, 1959.

Under the circumstances we shall be governed by the holdings in Sessions v. Whitcomb, Tex.Civ.App., 329 S.W.2d 470 and Heavy Haulers, Inc. v. Nicholson, Tex.Civ. App., 277 S.W.2d 250. The motion for rehearing is sustained. Our order of dismissal is set aside, and we shall proceed with a consideration of the appeal on its merits.

Appellee, Oran M. Purviance recovered judgment against appellant Leroy Holt for $1,905 in a suit charging failure on the part of Holt, a builder, to construct a house in accordance with plans and specifications.

Appellee has filed a motion to dismiss the appeal on the ground that appellant's appeal bond was not filed within thirty days after his motion for new trial was overruled as required by Rule 356, Texas Rules of Civil Procedure.

The record shows that judgment was rendered and entered November 12, 1959, motion for new trial was filed November 20, 1959 and an amended motion for new trial was filed on December 9, 1959. Nothing appears in the transcript to indicate that the court ever acted on either of the motions, so the amended motion will be presumed to have been overruled by operation of law 45 days after the amended motion was filed. Rule 329b, § 4, T.R.C.P. This would mean that the amended motion was overruled on January 23, 1960. Appellant's appeal bond was filed February 15, 1960, which was within the 30 days required by Rule 356, T.R.C.P.

However, appellee points out that there is nothing in the record to show that appellant obtained leave of court before filing his amended motion for new trial as provided by Rule 329b, § 2, T.R.C.P. Appellee contends that because of this failure to obtain leave of court appellant's amended motion for new trial is a nullity, and appellant's original motion must be considered to have been overruled by operation of law on January 4, 1960, 45 days after it was filed on November 20, 1959. Under this method of computation the filing of appellant's appeal bond on February 15, 1960 would be too late to give this court jurisdiction of the appeal.

We do not agree that appellant's amended motion for new trial must be considered a nullity because it was filed without first obtaining leave of court. While we have found no case exactly in point the holding in W. C. Turnbow Petroleum Corp. v. Fulton, 145 Tex. 56, 194 S.W.2d 256, seems to negative appellee's contention. In the Turnbow case the court did act in overruling what he thought was appellant's original motion for new trial. Actually an amended motion had been filed without the court's knowledge or leave. Our Supreme Court held that the trial court's action in overruling the original motion was tantamount to granting leave to amend. The opinion quotes from several cases wherein it is held that the filing of amended pleadings without leave of court is an irregularity, but not such an one as to deprive a party of his right to amend. The court further held that in favor of the right of appeal, a liberal rather than a strict construction would be given to the record. This latter holding has been followed in Ray v. Gage, Tex.Civ.App., 269 S.W.2d 411, 415; Hunt v. Wichita County Water Imp. Dist. No. 2, 147 Tex. 47, 211 S.W.2d 743, 744; and Sanders v. Aetna Life Ins. Co., Tex.Civ.App., 201 S.W.2d 234. Appellee's motion to dismiss the appeal is overruled.

The record presents several unusual features. The contract between the parties, apparently entered into somewhat inform-

ally, was partly written and partly oral. Appellee agreed to purchase the lot and the house to be built on it by appellant for a consideration of $15,300. There were written plans and specifications, but the only signed copy of the specifications, designated as "Description of Materials", remained in the possession of appellee. Appellant Holt, the contractor, had a copy of the plans, or blue prints, but apparently did not have a copy of the specifications.

Appellee Purviance testified that he was present at the job nearly every day watching the construction of the house and making notes concerning the job. Appellant Holt testified that with the exception of a complaint that the pocket doors were not working properly, appellee made no complaint prior to the filing of suit that there was anything wrong with the house. It is undisputed that after the house was completed, the deal was closed in the office of a title company, which closing included the acceptance by appellee of a deed to the house and lot from appellant, and a loan against the property which loan had been negotiated in appellee's behalf. However, neither waiver nor estoppel was pled or urged by appellant, so neither defense figures in this appeal.

■ In his first point on appeal appellant charges error in overruling his oral motion for continuance. There is nothing in the record to show that any motion for continuance, written or oral, was presented to or acted on by the court. But if an oral motion was presented as claimed, appellant is not in position to complain that it was overruled, for courts are not required to consider motions for continuance which are not in writing. Rule 251, T.R.C.P. 13 Tex.Jur.2d 10. Appellant's first point is overruled.

In his second, third and fourth points appellant claims error because of the overruling of (2) his first motion for instructed verdict, (3) his second motion for instructed verdict, and (4) his motion for judgment non obstante veredicto. Motions of this character may properly be sustained when there is no evidence to support the verdict. In this case there was some evidence that appellant failed to comply with the plans and specifications and that appellee suffered some damage because of said failure. Therefore, appellant was not entitled to have his motions sustained. His second, third and fourth points are overruled.

■ In his fifth point appellant asserts that the court erred in rendering judgment for appellee on the verdict since the overwhelming preponderance of the evidence was that appellant substantially performed the contract. This point requires an analysis of the evidence.

It is astounding that a building contractor would agree to a set of plans and specifications, then proceed to build a house without a copy of the specifications in his possession. But that is exactly what appellant did in this case. The explanation apparently lies in the fact that appellant, had built more than fifty houses in recent years and assumed that the specifications, entitled in this record "Description of Materials", for this house called for the same type and quality of construction as that which he had put in his other houses and which he considered good workmanship.

In addition to his own testimony appellee relied on the testimony of Elton French, an experienced building contractor, who testified as an expert witness.

Some of appellee's complaints were either ill founded or frivolous. As example out of a total of sixteen defects pled, we cite the following:

(1) Appellee pled that appellant failed to provide seven heat vent registers. Both appellee and French, appellee's own witness, testified the registers were there and installed. Appellee's testimony was that he was told by a furnace man that they were not the right kind of registers. The furnace man did not testify. Appellee's testimony was hearsay, but it was received without objection.

(2) Appellee pled that appellant failed to furnish and install 38 yards of linoleum. French testified that the linoleum was there and installed.

(3) The foundation was not waterproofed. Both appellant and appellee's expert witness, French, testified that they do not waterproof concrete and beam foundations and it is not the general building practice to do so.

(4) Appellant used 1" x 4" facer boards instead of 1" x 6" boards. French testified that the 1" x 4" boards used by appellant are just as good for the purpose as 1" x 6" boards.

(5) Appellant installed a 2" x 4" header in the furnace closet instead of a 2" x 6" header. French testified that he preferred the 2" x 4" header because it gave more stability.

(6) Appellant placed the garbage disposal on the left side of the kitchen sink though the specifications called for it to be on the right side.

There were other complaints of the like nature but we shall not continue the enumeration of them.

However, there is evidence of other failures to comply with the specifications, which failures must be considered of greater consequence under appellee's theory of the case. For example, appellant failed to install flashing behind the brick walls. According to the expressed opinion of appellee himself, which opinion was received in evidence without objection, in order to remedy this defect it would be necessary to remove the bricks, install the flashing, then replace the bricks—at a great expense. Again: appellant put 2" x 6" rafters instead of 2" x 8" rafters on the roof and hips of the house. To remedy this defect it would be necessary to remove the shingles from the roof, remove the 2" x 6" rafters, replace them with 2" x 8" rafters, then replace the shingles—again at a great expense.

Considering the record as a whole we cannot say that the overwhelming preponderance of the evidence was that appellant substantially performed the contract. Appellant's fifth point on appeal is overruled.

In his sixth point appellant charges that it was error to overrule his objection to Special Issue No. 2 in the court's charge for the reason that appellee failed to present any evidence that the cost of repairs claimed in his pleadings were either reasonable or necessary.

Special Issue No. 2 and the jury's answer thereto were as follows:

"Special Issue No. 2. What amount of money, if any, do you find from a preponderance of the evidence would be reasonable and necessary for Plaintiff to complete the house in question in substantial compliance with the plans and specifications involved herein? Answer in Dollars, if any, and cents, if any.

"Answer: $1,905.00."

So far as the record before us reveals appellant raised this objection for the first time in his motion for new trial and carried it forward into paragraph No. 7 of his amended motion for new trial. The objection so raised for the first time is entitled to our consideration, for the last sentence of Rule 279, T.R.C.P. provides as follows:

"A claim that the evidence was insufficient to warrant the submission of any issue may be made for the first time after verdict, regardless of whether the submission of such issue was requested by the complaining party."

In Myers v. Minnick, Tex.Civ.App., 187 S.W.2d 941, 943, Justice Norvell now of our Supreme Court, but then speaking for the San Antonio Court of Civil Appeals, said: "Under this provision of the rule, appellant, despite his failure to object to the submission of Special Issue No. 1,

may here present his contention that the jury's answer to Special Issue No. 1 is without support in the evidence. This contention was efficiently raised in appellant's motion for new trial and is here presented by appellant's points and the arguments thereunder. We are of the opinion that this contention of appellant must be sustained." See also Meek v. Bower, Tex.Civ.App., 333 S.W.2d 175.

█ We agree with appellant that there is no evidence in the record as to the reasonable cost of necessary repairs in this case. Nearly all the evidence on the subject of costs was given by appellee's witness French. He did testify that he made a cost estimate of what he would be willing to do certain work for as pointed out to him by appellee Purviance, but he was not asked and he did not testify that his figures were reasonable. Nor did he testify that the repairs were necessary. We quote from his testimony on this point:

"Q. Are you frequently or not called upon to go to a place and make an estimate of what you will be willing to do the certain work for? A. Almost every day.

"Q. All right; and with reference to this particular property of Mr. O. M. Purviance, did you go out there and give an estimate of what these certain things that were pointed out by Mr. Purviance would cost to have that done? A. That's right. * * *

"Q. All right, now with—with reference—*without you in your testimony citing whether or not any of these things need doing*—but posing you the hypothetical question, including these matters, would you say to the jury what, in your estimate, what your estimate is of the cost of making those (handing instrument to witness), and I will follow the written estimate that you submitted to me. A. (Witness examines instrument)." (Emphasis ours.)

Then follows his testimony as to the approximate cost of particular items pointed out by appellee Purviance.

This case was tried without objection on the theory that appellee's measure of damages was the reasonable and necessary cost of completing the house in compliance with the plans and specifications. The wording of Special Issue No. 2 so shows. Under the circumstances we must hold that since there was no evidence that the costs claimed by appellee were either reasonable or necessary, there was no basis for the submission of Special Issue No. 2. Appellant's sixth point on appeal is sustained.

In his seventh point appellant complains of the admission in evidence of the written specifications which bore notations made in red pencil by appellee.

█ Appellant admitted that he did not have a copy of the specifications, that he had signed the copy offered in evidence, which copy was true and correct, with the exception of the notations made by appellee. Appellee admitted that the notations were his, that only one set of specifications had been signed by both parties, and that this one set had been retained in his, appellee's possession. The court in overruling appellant's objection admitted only the specifications which both parties testified were in the instrument when it was executed, and so instructed the jury. We believe this qualified admission of the only set of specifications available was not reversible error. Appellant's seventh point is overruled.

In his eighth point on appeal appellant complains that "the damages as found by the jury were so excessive, from the pleadings and testimony, that the only possibility of obtaining proper damages, if any were suffered, would be a new trial."

As we have sustained appellant's sixth point on appeal to the effect that there was no evidence as to the reasonable cost of necessary repairs, it must follow that the

allowance of $1,905 as damages was excessive.

This conclusion seems further supported by the testimony of appellee's own witness French. He stated frankly that in some instances he had not checked the house to see whether the defects in fact existed. He also stated that there were instances when he had checked and found the alleged omissions did not exist. For instance he found that the linoleum, which appellee alleged had been omitted, had in fact been supplied and installed, but being asked to state the cost of furnishing and installing linoleum, he gave a figure of $133. This was included in his total costs. Also he testified that the seven heat vent registers were there, but he testified the cost of furnishing seven heat vent registers was $85. This was also included in his total costs. He testified that it was the general practice to use 2″ x 6″ rafters on the roof and hips of the house and it was all right under the City Code to do so, but the cost of removing the 2″ x 6″ rafters and replacing them with 2″ x 8″ rafters would be $175, and to replace the 32 squares of shingles, which would have to be removed in the process, would cost $900. He testified that to remove the 1″ x 4″ facer boards and replace them with 1″ x 6″ boards would cost $74, though he frankly stated that he preferred the 1″ x 4″ boards because they gave greater stability. He testified further that it would cost only $45 to install flashing in the walls, but the cost of removing and replacing 11,000 face bricks in the process would be $1,375.

 Appellant's reference in his eighth point to "proper damages" is too general and vague to require our consideration. In his argument under his sixth point appellant, among other assertions, says that appellee did not plead or prove the proper measure of damages, and in support of his argument cites us to 7 Tex.Jur. 632, and 13 Tex.Jur. 539, 540 and 542–545. However, the matter of the proper measure of damages was not raised in appellant's motion for new trial, nor is it the subject of a point on appeal.

Since the point has not been properly raised we shall not pass on the question of the proper measure of damages in this case. But in view of another trial we suggest that some thought be given to the holding in Hutson v. Chambless, 157 Tex. 193, 300 S.W.2d 943, in which case our Supreme Court says that if the defects in a building cannot be remedied without impairing the physical structure of the building, the measure of damages, in the absence of bad faith, is the difference between the value of the building as constructed and its value had it been constructed in accordance with the contract.

Since we have concluded that the verdict of $1,905 is excessive we sustain appellant's eighth point.

The judgment of the trial court is reversed and the cause remanded for another trial.