**WAL–MART STORES, INC., and Maria Inez Saenz, Appellants,**

v.

**Brandy ODEM, Appellee.**

No. 04–94–00693–CV.

Court of Appeals of Texas, San Antonio.

Aug. 21, 1996.

Rehearing Overruled Sept. 16, 1996.

516

J. Preston Wrotenbery, Magenheim, Bateman, Robinson, Wrotenbery & Helfond, Houston, for appellants.

William J. Tinning, Law Offices of William J. Tinning, Corpus Christi, for appellee.

Before STONE, DUNCAN and CANTU,[1] JJ.

## ON APPELLANTS' MOTION FOR REHEARING

CANTU, Justice.

We withdraw our judgment and opinion of May 22, 1996, and substitute the following.

Brandy Odem [Odem] appellee, brought suit against appellants Wal–Mart Stores, Inc. [Wal–Mart] and its store managers and against Maria Inez Saenz [Saenz aka Maggie], a Wal–Mart store greeter, for defamation, false imprisonment and assault. By unanimous verdict, a Brooks County jury awarded Odem $10,000 in actual damages and $800,000 in punitive damages. The trial court subsequently reduced the punitive damage award to $200,000. For reasons hereinafter set out, we reform the trial court's judgment, and as so reformed, we affirm.

On March 14, 1992 appellee Odem, then sixteen years old, accompanied by her male friend, Tony Chapa [Chapa], went to the Wal–Mart Store in Falfurrias, Texas for the single purpose of purchasing a particular cassette tape. When they entered the store, they proceeded directly to the section of the store displaying cassettes, and when they did not locate the particular tape they were looking for, they began to leave the premises. On the way out of the store, as Chapa walked ahead of her, Saenz, working as a store greeter, confronted Odem in the presence of other customers, as she exited through the store's door.

Odem had a purse looped over her bent arm as she walked out the door when Saenz suddenly grabbed Odem by the arm, turned her around, and reached into her purse to retrieve a blue package readily visible in Odem's purse, and which Saenz believed was store merchandise [a blue shirt]. Odem described Saenz's act as a pull or a touch of either her elbow or hand. Simultaneous with Odem turning around, Saenz told her that

she suspected Odem had a blue and white shirt in her purse that had not been paid for.

Chapa, who was ahead of Odem, turned around and witnessed the encounter. As he walked back towards the two, Chapa overheard Saenz tell Odem "take out the item you have in your purse" or "you have something in your purse." After seeing Saenz reach into Odem's purse, Chapa overheard Saenz apologize to Odem and explain to her that she had seen something in Odem's purse that resembled unpaid merchandise. Only then did Saenz release Odem. According to Odem, she did not feel free to go, "because if I was free to go, I would have left, but I wasn't. I was halted there and I stayed there."

The entire incident lasted about fifteen minutes, with most of the time spent in Saenz apologizing to Odem. As Odem and Chapa left the premises, Odem related how she had been embarrassed by the incident. The following day, Odem's mother [Villa] went to the Wal–Mart store to speak to David Perez, the store manager. At a conference held at the store, Saenz was called in and Perez offered to terminate Saenz if that was what Ms. Villa desired.

On July 15, 1993, after Odem turned eighteen, suit was filed. In response to jury issues, the jury found that Odem had been assaulted, slandered and falsely imprisoned; that Saenz made a defamatory statement with malice, and that such statement was not qualifiedly privileged. The jury further found that Wal–Mart's negligence proximately caused the incident, that Wal–Mart had ratified Saenz's actions, and that Wal–Mart had been grossly negligent.

Appellants assign ten points of error, all of which attack the findings of the jury, as well as the awards made.

### The False Imprisonment

Point of error one challenges the legal and factual sufficiency of the evidence to support the jury's finding that Odem was falsely imprisoned without legal authority.

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to Tex.Gov't

CODE ANN. § 74.003(b) (Vernon 1988).

The following jury question and instructions were submitted to the jury.

### Question No. 2

Do you find from a preponderance of the evidence, on the occasion in question that the Defendant falsely imprisoned BRANDY ODEM?

"FALSE IMPRISONMENT" is the willful detention of another against her consent and when it is not expressly authorized by law, whether such detention be affected by an assault, by actual violence to the person, by threats, or by any other means which restrain a party so detained from moving from one place to another. False Imprisonment may be committed by words alone or by acts alone, or both.

"RESTRAINT" means detention from which a person cannot ordinarily relieve himself. A threat which is alleged to have resulted in false imprisonment must be calculated to detain the person. It must result in more than intimidation, such that a person cannot by ordinary means relieve himself from restraint or detention.

"WILLFUL DETENTION" means detention resulting from an intent to confine. You are instructed that the willful detention of another, without such a person's consent, is expressly authorized by the laws of the State of Texas when a person reasonably believes another has taken or is attempting to take property if the detention of such other person is effected in a reasonable manner and for a reasonable period of time for the purpose of investigating ownership of property.

*Instruction* RE: False Imprisonment/Detention: In regard to Special Issue No. 2 you are instructed that, by law, any merchant, his agent or employee, who has reasonable ground to believe that a person has wrongfully taken or has wrongful possession of merchandise, may detain such person in a reasonable manner and for a reasonable length of time for the purposes of investigating the ownership of such merchandise. Such reasonable detention shall not constitute false imprisonment.

The jury answered, "We do."

In support of appellants' position two arguments are advanced. First, it is claimed that there was no restraint to constitute a detention and alternatively, if there was a detention, that appellants possessed legal authority to do so.

 The essential elements of false imprisonment are 1) a willful detention, 2) without consent, and 3) without authority of law. *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d 374, 375 (Tex.1985); *H.E. Butt Grocery Co. v. Saldivar,* 752 S.W.2d 701, 702 (Tex.App.—Corpus Christi 1988, no writ). The burden was upon appellee to prove all three elements including the absence of authority. *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d at 376. Essentially appellants concede that the first two prongs have been met but urge that there was legal authority to detain.[2] We agree that the evidence supports a finding of a willful detention without appellee's consent.

To show legal authority, appellants rely on the statutory privilege found in Section 124.001 of the Texas Civil Practice & Remedies Code which provides that:

> "A person who reasonably believes that another has stolen or is attempting to steal property is privileged to detain that person in a reasonable manner and for a reasonable time to investigate ownership of the property."

TEX.CIV.PRAC. AND REM.CODE ANN. § 124.001 (Vernon 1986).

 Section 124.001 sometimes referred to as the shopkeeper's privilege is, however, limited to investigative detentions and does not extend to a suit based upon an arrest. Once proof of an unlawful arrest is made, the burden shifts to the appellants to show justification for the arrest.

 Legal authority or legal justification is met either by the procurement of an arrest warrant or by the showing of existence of probable cause. *Avalos v. Mejia,* 788 S.W.2d 645, 646 (Tex.App.—Corpus Christi 1990, no writ); *Tandy v. McGregor,*

---

**2.** Appellants' brief p. 7 "In this instance, appellants possessed legal authority."

527 S.W.2d 246, 248 (Tex.Civ.App.—Texarkana 1975, writ ref'd n.r.e.); *Meyer v. Monnig Dry Goods Co.,* 189 S.W. 80, 81 (Tex.Civ. App.1916, writ ref'd). A statutory privilege is in the nature of a defense but does not rise to the level of legal authority or justification. But, here we are concerned with an alleged false imprisonment arising out of a detention, and not an arrest.

Reasonable cause for an investigative detention is something less than probable cause. The test of liability is not based on the store patron's actual guilt or innocence, but rather on the reasonableness of the store employee's action under the circumstances. And whether reasonable belief is established, is usually an issue of fact to be determined by the trier of facts from a full and thorough consideration of all of the evidence bearing on the question. An analysis of the evidence as it bears upon the statutory privilege requires that we focus on the reasonableness of the belief to detain, the reasonableness of the manner of detention and the reasonableness of the duration of the detention.

Saenz testified that she had previously worked for a Wal–Mart store in Corpus Christi as a sales clerk for almost a year before transferring to the Falfurrias Wal–Mart in March of 1992. Upon commencing her employment in Falfurrias she was put through an orientation course wherein she was told about store procedures and policies, including those addressing shoplifting. Her first position at the Falfurrias store was as a sales clerk and then she was assigned the position as a store greeter. On the day of her new assignment she attended a mandatory meeting where the subject of theft and shrinkage was discussed.

Sometime shortly thereafter, on March 14, 1992, Saenz was working the exit doors checking receipts against the items that had been purchased by customers. At the time Odem walked up to Saenz on her way out of the store, Saenz was busy cleaning windows by the exit doors. Saenz saw Odem and Chapa, whom she had seen together on prior occasions, walking towards her, but had not seen Odem at the register purchasing anything. In fact, Saenz never saw Odem or Chapa anywhere in the store until they were walking out of the store. Nor did she entertain any suspicion about them until the confrontation occurred.

As Odem approached, Saenz noticed Odem's purse, and what appeared to be a blue package which Saenz supposed to be a shirt. Not being sure about what she had seen and entertaining doubt, Saenz hesitated momentarily and then, nevertheless, concluded that she had seen a shirt. By this time Odem was through the exit door and into a portion of the store's parking lot. Without assurances, Saenz went ahead and confronted Odem by asking her to show a receipt for the shirt in the purse. Odem, now turned around, went into a state of shock. Saenz proceeded to ask Odem if she could inspect her purse while simultaneously reaching into the purse.

The item suspected of being a shirt was, in fact, a blue makeup bag containing personal items belonging to Odem. At that point, Saenz commenced to apologize. After the incident, Saenz went to report to the assistant manager about the incident, and Saenz was advised that she was not supposed to do what she had done. Saenz was aware of a practice requiring the notification of security personnel under such circumstances from prior employment at a Corpus Christi Wal–Mart. She also recalled being advised subsequent to the incident herein that she should contact management.

When we consider all of the evidence bearing on reasonable belief to detain we are confronted with little more than unfounded naked suspicion. There is no reasonable basis to formulate the belief that Odem had stolen anything. In light of Odem's denial that she had even been near the clothing department of the store, and in the absence of evidence to the contrary, a rational jury was justified in finding that Saenz did not reasonably believe a theft had occurred and that a qualified privilege under Section 124.001 of the Civil Practice and Remedies Code did not arise. *Cf. H.E. Butt Grocery Co. v. Saldivar,* 752 S.W.2d at 703–04. (detaining security guard did not witness alleged theft of sunglasses, purported witness

to theft unidentified and no witness to alleged theft testified appellee anywhere near sunglasses displayed coupled with strong denial by appellee).

Odem's testimony that she was grabbed by Saenz as she walked out of the store and subjected to a search supports the jury's finding of a willful detention. Moreover, Saenz's admission and apology reinforces authority for such a finding.

Odem's following testimony supports the jury's finding of a nonconsensual restraint:

Q. Did you see her when you went into the store?

A. No, I did not. Because she wasn't in the—she wasn't greeting the people in the front. She was in the outside.

Q. On the exit side?

A. On the exit side.

Q. And that's the only time you saw her?

A. Right. When she turned me around. I hadn't even seen her when I was walking out.

Q. All right. How long did it take her to actually look through—go through your purse?

A. About two minutes.

Q. Okay. During that time, was it clear to you that, from her words or her conduct, that you were not free to go until she was through?

A. Right. Because if I was free to go, I would have left, but I wasn't. I was halted there and, I stayed there.

Q. Physically, while she had the purse,—

A. Right.

Q. —it was on your arm?

A. Right. First, it was on my arm, then she pulled it off, and looked through it.

Although Saenz denied physically restraining Odem, she did not deny the stop. The evidence presented two versions of the events leading up to the confrontation. The question of whether a false imprisonment had occurred was properly submitted to the jury in their role as the triers of fact. *Moore's, Inc. v. Garcia,* 604 S.W.2d 261, 264 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

 In addressing appellants' no evidence challenge, we adhere to the rule that requires us to consider only evidence and inferences tending to support the jury finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). If there is any evidence of probative value to support the jury verdict, we must affirm. Thus, viewing the evidence from this posture, we overrule appellants' no evidence challenge.

 In addressing appellants' contention that the jury's finding is "against the great weight and preponderance" of the evidence, we focus on all of the evidence; both the evidence which tends to prove the existence of a vital fact, as well as evidence which tends to disprove its existence. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Viewing the evidence from this posture, we do not regard the jury finding to be so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, and therefore, we do not disturb the jury finding. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Appellant's point of error one is overruled.

### The Assault

Appellant's second point of error alleges that there is no evidence, or in the alternative, that the evidence is insufficient to support the jury finding that Odem was assaulted without legal justification.

The following question was submitted to the jury without objection from appellants:

### QUESTION NO. 1

Did Defendant, MARIA INEZ SAENZ, assault the Plaintiff, BRANDY ODEM, on March 14, 1992?

"ASSAULT" is defined as (1) intentionally, knowingly, or recklessly causing bodily injury to another; (2) intentionally or knowingly threatening another with imminent bodily injury; or (3) intentionally or knowingly causing physical contact with another when he or she knows or should reasonably believe that the other will regard the contact as offensive or provocative.

"INTENT" means that the person is aware that it is practically certain that his conduct will cause the intended result.

"KNOWINGLY" means that the person is aware that it is practically certain that his conduct will cause the intended result.

"RECKLESSLY" means a person consciously disregards a substantial and unjustifiable risk that harm will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the person's conduct and the circumstances known to him, it's [sic] disregard involves a gross deviation from the standard conduct that a law-abiding person would observe in the person's situation.

The jury responded in the affirmative.

In support of their second contention, appellants argue that the jury finding on assault constitutes nothing more than a finding of a general element of false imprisonment because "false imprisonment is usually effected by means which would constitute an assault or a battery."

■ It is the law of this State that an assault is both an offense against the peace and dignity of the State, as well as an invasion of private rights. *Texas Bus Lines v. Anderson*, 233 S.W.2d 961, 964 (Tex.Civ. App.—Galveston 1950, writ ref'd n.r.e.). For that reason, the definition of assault, whether in a criminal or civil trial, is the same. *Moore's, Inc. v. Garcia*, 604 S.W.2d at 264.

The pertinent portion of the Penal Code addressing assaults may be found in section 22.01. Only subsection (3) finds support in the evidence and is fairly contained in jury question number one of the trial court's charge as an instruction/definition.

Subsection (3) reads:

intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX.PENAL CODE ANN. § 22.01(3) (Vernon 1994).

3. "... is privileged to detain that person in a *reasonable* manner ..." Tex.Civ.Prac. & Rem.

■ The testimony of Odem clearly discloses a grabbing of the arm by Saenz which Odem considered offensive. Moreover, if the jury accepted the testimony showing that Saenz only grabbed Odem's purse while she was holding on to it, and not any portion of Odem's body, the conduct would, nevertheless, constitute an assault under subsection (3) of section 22.01.

In *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex.1967), the Texas Supreme Court recognized that an intentional snatching of an object from one's hand is as clearly an offensive invasion of one's person as would be an actual contact with the body.

Appellants' reliance upon *Hogenson v. Williams*, 542 S.W.2d 456 (Tex.Civ.App.— Texarkana 1976, no writ) is misplaced. In *Hogenson*, assault was defined under the former penal code as "the use of any unlawful violence upon the person of another *With intent to injure him.*" *Hogenson v. Williams*, 542 S.W.2d at 458. (emphasis ours). An intent to injure was the gist of the offense. *Id. Hogenson* simply instructs us that the law is not static and that the Legislature can and does create new types of assaults. For the same reason *York v. State*, 833 S.W.2d 734 (Tex.App.—Fort Worth 1992, no pet.), is not controlling because the gist of the offense therein was assault causing bodily injury.

■ Appellants would have us extend the benefits of the shopkeeper's privilege to conduct constituting an assault. We see no justification for doing so, as it clearly was not the intent of the Legislature to insulate a person from liability for committing an act proscribed by a criminal statute under the guise of an investigative detention. The language of the privilege belies such a contention.[3]

■ Moreover, we reject appellants' attempt to invoke the benefits of Texas Penal Code section 9.43 which provides:

A person is justified in using force or deadly force against another to protect

Code § 124.001 (Vernon 1986).

land or tangible, movable property or a third person if, under the circumstances as he reasonably believes them to be, the actor would be justified under Section 9.41 or 9.42 [4] of this code in using force or deadly force to protect his own land or property and:

(1) the actor reasonably believes the unlawful inference constitutes attempted or consummated theft of or criminal mischief to the tangible, movable property; or

(2) the actor reasonably believes that:

(A) the third person has requested his protection of the land or property

TEX.PENAL CODE ANN. § 9.43 (Vernon 1994). Appellants neither pleaded, nor raised evidence in support of such justification.[5] Moreover, no request was made for an instruction incorporating such in the court's charge. Nor, as noted above, was there an objection to the question as submitted in the court's charge. Additionally, the jury declined to apply the benefits of section 124.001 to the issue on false imprisonment and such benefits may not now be urged as applicable to the issue of assault for the various reasons heretofore given.

The question submitted to the jury required a finding of the elements of assault.

4. Sections 9.41 and 9.42 provide:
**§ 9.41. Protection of One's Own Property**
 (a) A person in lawful possession of land or tangible, movable property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property.
 (b) A person unlawfully dispossessed of land or tangible, movable property by another is justified in using force against the other when and to the degree the actor reasonably believes the force is immediately necessary to reenter the land or recover the property if the actor uses the force immediately or in fresh pursuit after the dispossession and:
 (1) the actor reasonably believes the other had no claim of right when he dispossessed the actor; or
 (2) the other accomplished the dispossession by using force, threat, or fraud against the actor.
**§ 9.42. Deadly Force to Protect Property**
 A person is justified in using deadly force against another to protect land or tangible, movable property:

Appellee was not required to secure a finding of no justification. Once proof of an unlawful assault is made, the burden shifts to the appellants to show justification for the act. Viewing the evidence under the standards in *Cain v. Bain, supra* and *In re King's Estate, supra,* we overrule appellants' contention that the evidence was legally and factually insufficient to support the jury finding on assault.

### The Defamation and The Qualified Privilege

Appellants' third point of error alleges that there is no evidence to support the jury's finding that a slanderous communication was made because there was an immediate apology and, alternatively, if there was a slanderous communication, then there is no evidence of malice.

Jury Question number three inquired:

### Question No. 3

"Do you find from a preponderance of the evidence that on the occasion in question the Defendant made slanderous, defamatory statements about BRANDY ODEM?

(1) if he would be justified in using force against the other under Section 9.41; and
(2) when and to the degree he reasonably believes the deadly force is immediately necessary:
 (A) to prevent the other's imminent commission of arson, burglary, robbery, aggravated robbery, theft during the nighttime, or criminal mischief during the nighttime; or
 (B) to prevent the other who is fleeing immediately after committing burglary, robbery, aggravated robbery, or theft during the nighttime from escaping with the property; and
(3) he reasonably believes that:
 (A) the land or property cannot be protected or recovered by any other means; or
 (B) the use of force other than deadly force to protect or recover the land or property would expose the actor or another to a substantial risk of death or serious bodily injury.
TEX.PENAL CODE ANN. §§ 9.41, 9.42 (Vernon 1994).

5. Saenz, in fact, denied the use of force altogether.

"SLANDER" is a defamatory statement, orally communicated or published, without legal excuse, and it imputes to the plaintiff the commission of a crime that affects the Plaintiff injuriously in his or her profession, business or occupation."

The jury answered "We do."

Jury Question No. 4 inquired:

### Question No. 4

"Did the Defendant, WAL–MART STORES, INC., have a qualified privilege in making the statements about the Plaintiff?

"QUALIFIED PRIVILEGE" means a communication is conditionally or qualified privileged so long as it is made in good faith and is in regard to some matter in which the author has an interest or a duty to another person having a corresponding duty."

The jury answered "No."

Jury Question No. 9 inquired:

### Question No. 9

"Did the Defendant, MARIA INEZ SAENZ, on the occasion in question act with Malice, as that term is defined herein?

"MALICE" means that the statements made by MARIA INEZ SAENZ were made with knowledge of their falsity or reckless disregard as to whether they were false or not."

The jury answered, "Yes."

In their point of error four, appellants contend that the jury's negative finding in question number four, that no qualified privilege existed, is not supported by legally sufficient evidence or, alternatively, the finding is against the great weight and preponderance of the evidence.

■ This contention is presented to us without benefit of argument or authorities other than the contention that "appellant adopts the arguments and authorities set forth in all points of error." Such a presentation does not comport with briefing requirements of Tex.R.App.P. 74 which requires the argument in support of a point of error to include a fair statement of the facts pertinent to the point with references to pages in the record where such facts may be found and discussion of the facts and authorities relied upon. *See Connors v. Connors,* 796 S.W.2d 233, 236–37 (Tex.App.—Fort Worth 1990, writ denied).

■ Nevertheless, we address the merits of the contention under the following standards of review. In addressing appellants' point that there is "no evidence" to support a jury's negative finding where appellants had the burden of proof, we examine the record for evidence that supports the finding while ignoring all evidence to the contrary. If we find no evidence to support the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. If the contrary proposition is established conclusively by the evidence, the point of error will be sustained. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989).

■ When we address appellants' contention that the jury's negative finding on an issue in which they had the burden of proof, is against the great weight and preponderance of the evidence, we review all of the evidence, both for and against the issue, and determine whether the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Ames v. Ames,* 776 S.W.2d 154, 158 (Tex.1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651 (Tex.1988).

■ In addressing appellants' points of error three and four we need not belabor the opinion with a lengthy discussion on the nature of the remarks attributed to Saenz as appellants clearly concede that the communication was defamatory, to wit:

"It is clear there is ample evidence to support the jury's finding Mrs. Saenz's statement was false. Mrs. Saenz, herself, admitted this fact which was only discovered after the fact. But however false her statement or however wrong she was to have suspected Odem possessed an unpaid item, the circumstances do not show malice." APPELLANTS' BRIEF pp. 21–22

But even in light of the foregoing admission, it is urged that the provisions of section 124.001 Texas Civil Practice & Remedies Code are to be extended to the making of defamatory remarks under a qualified privilege. We once again reject this notion for the same reasons heretofore stated. But, we recognize that a statement made under the circumstances disclosed in the instant case may, nevertheless, be qualifiedly or conditionally privileged as a matter of public policy. *Mayfield v. Gleichert,* 484 S.W.2d 619 (Tex.Civ.App.—Tyler 1972, no writ).

A qualified privilege comprehends communications made in good faith on a subject matter in which the author has an interest or with reference to which he has a duty to perform to another person having a corresponding interest or duty. *Frank B. Hall & Co. v. Buck,* 678 S.W.2d 612, 622 (Tex.App.—Houston [14th Dist.] 1984 writ ref'd n.r.e.), *cert. denied,* 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985); *Houston v. Grocers Supply Co.,* 625 S.W.2d 798, 800 (Tex.App.—Houston [14th Dist.] 1981, no writ). Such privilege is termed conditional or qualified because a person availing himself of it must use it in a lawful manner and for a lawful purpose. The effect of the privilege is to justify the communication when it is made without actual malice. *Buck v. Savage,* 323 S.W.2d 363, 372 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e). Even a slanderous per se communication on a privileged occasion is qualifiedly or conditionally privileged, and not actionable, *Flowers v. Smith,* 80 S.W.2d 392, 393 (Tex.Civ.App.—Amarillo 1934, no writ) unless the defendant was actuated by malice. *Bridges v. Farmer,* 483 S.W.2d 939 (Tex.Civ.App.—Waco 1972, no writ).

Privileged and unprivileged communications differ principally in that publication of the latter implies malice as a matter of law, whereas damages can be recovered for privileged defamatory words only when actual or express malice is proved as a fact. *Houston Chronicle Publishing Co. v. McDavid,* 157 S.W. 224, 225 (Tex.Civ.App.—Houston 1913, no writ).

Generally, when the publication is made under circumstances creating a qualified or conditional privilege, the plaintiff has the burden to prove malice or want of good faith. *Cheatwood v. Jackson,* 442 S.W.2d 789, 792 (Tex.Civ.App.—Houston [14th Dist.]), *writ ref'd n.r.e. per curiam,* 445 S.W.2d 513 (1969).

So, where the defendant fails to prove the existence of a privilege, the plaintiff is not required to prove that the privilege was abused or that the defendant acted with malice. But even if the statements in question were indeed qualifiedly or conditionally privileged, if the jury finds malice in the case, the privilege falls by the wayside. *Frank B. Hall Co. v. Buck,* 678 S.W.2d at 622; *Houston v. Grocers Supply Co.,* 625 S.W.2d at 801.

In the instant case the jury found that Saenz's communication was actuated by malice and further found that appellants were not entitled to the benefits of a qualified privilege at the time the statements were made. Thus, if no privilege existed at the time of the communication, we need not concern ourselves with the existence of malice. On the other hand, if malice was present at the time of the communication it matters not whether a qualified privilege existed at the time.

*Malice*

In *Hagler v. Proctor & Gamble Mfg. Co.,* 884 S.W.2d 771 (Tex.1994), the Texas Supreme Court stated:

[A]ctual malice is a term of art which is separate and distinct from traditional common law malice. Actual malice in the defamation context does not include ill will, spite or evil motive but rather requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989). " Actual malice is not ill will, it is the making of a statement with knowledge that it is false or with reckless disregard of whether it is true." *Carr v. Brasher,* 776 S.W.2d 567, 571 (Tex.1989).

"Reckless disregard" is defined as a high degree of awareness of probable falsity, for proof of which the plaintiff must present

sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. *Carr v. Brasher,* 776 S.W.2d at 571; *Casso v. Brand,* 776 S.W.2d at 558.

Proof that a defendant published a statement knowing of its falsity or with serious doubt as to its truth is most easily proved by circumstantial evidence. *Frank B. Hall & Co. v. Buck,* 678 S.W.2d at 621.

■■■ Saenz testified that she first saw Odem when Odem was about to exit the store. Saenz had not seen Odem enter the store, nor was Saenz aware of Odem's presence in any area of the store. Saenz had no reasonable basis for believing that Odem even went near the clothing department nor did she even know whether the suspected item was clothing.

Although Saenz was aware of a practice requiring her to notify security, she did not do so this time because the store provided none. Saenz admitted that at the time of the confrontation with Odem she had a doubt about the presence of a shirt in Odem's purse, but nevertheless, made up her mind to deliberately confront Odem about the suspected item.

Appellants argue that the foregoing evidence, even if it is evidence of malice, is nevertheless, negated by the fact that Saenz immediately apologized to Odem when Saenz realized that the belief was unfounded.

We are directed to the case of *Linney v. Maton,* 13 Tex. 449 (1855) wherein the Texas Supreme Court stated:

"If slanderous words spoken are immediately retracted in the same conversation and in the hearing of all who heard them spoken, so as to show the speaker meant no imputation, no action can be maintained." [6]

The evidence indicates several individuals were present at the time of the communication to Odem. There is no evidence that the apology occurred in the same conversation and in the hearing of all who heard the communication spoken. But even if there were some evidence, we perceive that it devolved upon the appellants to submit a question to the fact finder and to obtain a favorable finding on the matter or to seek an explanatory instruction on the issue of malice.

Nonetheless, we view the holding in *Linney v. Maton,* as an aberration in the jurisprudence of this State, such that our Supreme Court, upon reflection, viewed the holding as regrettable in *McQueen v. Fulgham,* 27 Tex. 463 (1864) [7] and in *Hatcher v. Range,* 98 Tex. 85, 81 S.W. 289 (1904). *See Patterson and Wallace v. Frazer,* 79 S.W. 1077, 1082 (Tex.Civ.App.1904, no writ) (wherein it was recognized that Texas was the last jurisdiction in the United States to depart from the common law in enacting statutes permitting the imputation of a want of chastity to a female to be actionable per se).

**6.** Curiously, the Court in *Linney* departs from established jurisprudence in a number of ways, including substituting itself as a factfinder in the place of the jury.

Although the appellant Linney adamantly denied making the slanderous remark, the court, nevertheless, speculates and concludes:

"The defendant at the time positively denied using the words, and the witness did not hear them, though he testified distinctly to having heard the language used by the plaintiff, which seems to have provoked them. It is quite certain that if the defendant did use the words ascribed to him he instantly retracted them; they were uttered when under the excitement and heat of passion, in a bandying of epithets which seems to have been begun by the plaintiff herself; retorted without time for reflection, while smarting under the lash of the tongue, repelling in kind an assault of the

tongue . . . There can be no question that such was the case in this instance.

The use of the words was denied by the defendant the moment he was accused of having used them. If uttered, they were instantly retracted." *Linney* at 455–458.

Moreover, the controlling issue in *Linney v. Maton* was that words importing a want of chastity to a female are not actionable without a showing of special damages. The defense of apology, if it be such, was not a necessary holding for a disposition by the court and can only be seen as obiter dictum.

**7.** "The conclusion that we have attained is the same to which this court was forced when the question was previously before it in the case of *Linney v. Maton,* 13 Tex. 449." *McQueen v. Fulgham,* 27 Tex. at 470.

We reject appellants' contention that Saenz's apology precludes a finding of slander by the jury. Moreover, we are not persuaded that Odem was required to demonstrate a state of mind on the part of Saenz which exceeded ill will. *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d at 77; *Casso v. Brand*, 776 S.W.2d at 558; *Carr v. Brasher*, 776 S.W.2d at 571.

Appellants' challenge to the jury finding of malice is overruled.

Since we have found that the jury was authorized, under the facts of this case, to find that Saenz, in fact, entertained serious doubts as to the truth of the defamation; that she acted with reckless disregard in publishing the statement with reservations about its truthfulness, it matters not that the publication was qualifiedly privileged when made. *Frank B. Hall Co. v. Buck*, 678 S.W.2d at 622.

Appellants' points of error three and four are overruled.

■ Appellants' point of error five alleges that the evidence is legally and factually insufficient to support the jury's finding that Wal–Mart was independently, as opposed to vicariously, negligent.

Odem's petition alleged that Wal–Mart was negligent by not promulgating sufficient and adequate instructions and training to its management personnel and store personnel in how to properly handle suspected shoplifters so as to prevent lawful shoppers, such as appellee, from being wrongfully accused and unnecessarily humiliated.

The question submitted to the jury was the well worn negligence question, "Did the negligence, if any, of Wal–Mart Stores, Inc. proximately cause the occurrence in question?", to which the jury replied "Yes." There was no objection to the submission of the foregoing question and, in fact, appellants informed the trial court, "this case rises and falls on Maggie's [Saenz] conduct and Wal–Mart stands behind her." Thereafter appellants entered into a stipulation in the presence of the jury that the conduct complained about occurred while Saenz was in the course and scope of her employment for Wal–Mart.

The evidence showed that Saenz, when transferred to the Falfurrias store, never received any training on how to handle suspected shoplifters. She was aware from prior employment at a Corpus Christi Wal–Mart that security was to be contacted when shoplifters were suspected, but the Falfurrias Wal–Mart did not have security personnel and, instead had its own policy requiring employees to contact managerial personnel. This policy was not made known to Saenz until after the fact.

Nevertheless, Wal–Mart lectured its employees on the problem of shrinkage and theft and urged its employees to be ever vigilant. We overrule appellant's contention that the jury's response to the negligence question is not supported by legally and factually sufficient evidence. Appellants' point of error five is overruled.

### Damages

Point of error six alleges that the award of $10,000 as actual damages is excessive and requires remittitur.

■ The damages resulting from libel and slander are purely personal and cannot be measured by any fixed standard or rule. The amount to be awarded rests largely in the discretion of the jury, and the appellate courts will not disturb the verdict unless it appears from the record to be excessive or the result of passion, prejudice or other improper influence. *Frank B. Hall & Co. v. Buck*, 678 S.W.2d at 630; *Bolling v. Baker*, 671 S.W.2d 559, 571 (Tex.App.—San Antonio 1984, writ dism'd w.o.j.), *cert. denied*, 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 64 (1985); *Winkel v. Hankins*, 585 S.W.2d 889 (Tex.Civ. App.—Eastland 1979, writ dism'd). Moreover, where actual malice is found, damages are presumed if the statement is slanderous per se. *Bolling v. Baker*, 671 S.W.2d at 571.

■ In setting a damage award in a false imprisonment case, the jury may look to all injuries of the plaintiff, not limiting consideration to those that are physical in nature, but also including the more intangible injuries of humiliation, shame, fright and anguish. *J.C. Penney Co. v. Duran*, 479 S.W.2d 374, 382

(Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.).

Additionally, in cases involving assault and battery [statutory assault], a plaintiff may recover for mental suffering apart from other injuries. In *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex.1967), the court held that damages for mental suffering are recoverable without necessity of showing an actual injury in a case of willful battery and, consequently, a defendant is liable for contacts which are offensive and insulting. 424 S.W.2d at 630. Mental anguish consists of the emotional response of the plaintiff caused by the tortfeasor's conduct. *Birchfield v. Texarkana Mem. Hosp.*, 747 S.W.2d 361, 368 (Tex.1987).

The term mental anguish implies a relatively high degree of mental pain and distress. *Teledyne Exploration Co. v. Klotz*, 694 S.W.2d 109, 112 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). It is more than mere disappointment, anger, worry, anxiety, resentment or embarrassment, although it may include all of these. *Tarrant Bank v. Miller*, 833 S.W.2d 666, 669 (Tex. App.—Eastland 1992, writ denied); *Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 803 (Tex.App.—Dallas 1987, no writ); *Teledyne Exploration Co.*, 694 S.W.2d at 112. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair or public humiliation or a combination of any of these. *GAB Business Servs., Inc. v. Moore*, 829 S.W.2d 345, 350 (Tex.App.—Texarkana 1992, no writ).

It is within the jury's province to judge the credibility of witnesses and the weight to be given their testimony. *Kneip v. UnitedBank–Victoria*, 774 S.W.2d 757, 759 (Tex.App.—Corpus Christi 1989, no writ). This is especially true regarding claims for mental anguish, which are necessarily speculative claims, and, thus, should be left to a jury for determination. *Guzman v. Guajardo*, 761 S.W.2d 506 (Tex.App.—Corpus Christi 1988, writ denied); *State Farm Mut. Auto. Ins. Co. v. Zubiate*, 808 S.W.2d 590, 601 (Tex.App.—El Paso 1991, writ denied).

Much discretion must be given to the jury in setting the amount because they are best suited to determine whether and to what extent the defendants' conduct caused compensable mental anguish. *GAB Business Serv.*, 829 S.W.2d at 350.

Once the existence of mental anguish is established, the incalculable amount cannot logically be refuted or shown to be factually insufficient because there are no objective facts by which to measure the amount. *State Farm Mut. Auto. Ins. Co. v. Zubiate*, 808 S.W.2d at 601. Appellate courts are not free to substitute their judgment for that of a jury. *Larson v. Cactus Utility Co.*, 730 S.W.2d 640, 641 (Tex.1987).

The duty of this court is to determine if the value found by the jury is so against the evidence, or unsupported by evidence, so as to be manifestly unjust. If we find the evidence to be factually sufficient we are not at liberty to order a remittitur. We may order a remittitur only if we find the verdict to be excessive. Then we must exercise our sound judicial judgment and discretion to determine what reasonable compensation should be. *Pope v. Moore*, 711 S.W.2d 622, 623 (Tex.1986).

Saenz testified that Odem, when confronted by her, went into shock and stood there in a daze, unable to utter a word or to respond to her apologies.

Chapa testified that he drove Odem home directly from the Wal–Mart and discussed the incident very little because Odem was too traumatized by the incident to want to talk about it. Odem did not discuss the incident further until she arrived at her mother's house where she reported the event.

Odem testified that she went into shock during the confrontation, that she could not speak or do anything, and that she just stared at Saenz not wanting to believe what was happening to her. Immediately after the incident, Odem was unable to go into the store to make a report because she was still very much affected by the incident.

Two and a half years after the incident Odem was still suffering from a phobia related to shopping in stores. Although she ad-

mitted returning to the Wal–Mart three to four months after the incident to make small purchases, Odem explained that each visit was accompanied by an ever present fear that the incident or something similar might occur again. Odem testified that she does not shop much anymore because it is too emotionally upsetting to be constantly reminded of the Wal–Mart incident.

Odem further testified that every time she sees a person that was present at the scene of the incident she wants to hide because she feels that the person might view her as a thief. She has not to the present been able to erase the incident and the accusations from her mind.

On cross examination, Odem admitted occasionally shopping at an H.E.B. Food Store and at the Wal–Mart. But she explained that because Falfurrias is a small community there are no other retail facilities available to her. Even so, Odem feels fearful and traumatized by any shopping experience.

Odem, a college student, admitted that she did not experience problems studying and that her grades were not being affected by the incident. She also admitted working part-time doing demonstrations in stores and malls (in Corpus Christi) but explained that working in a store is not the same as shopping there, that her fear is amplified during the shopping experience.

Odem also admitted that she had not sought counseling with either a priest, a minister, a psychologist or a counselor, but explained that she could not financially afford counseling although she desired it, but would have been too embarrassed to seek it any way. She also explained that she was too traumatized by the incident to accompany her grandmother to the Wal–Mart to seek an explanation after the incident.

The court's charge instructed the jury that they could assess damages for physical and mental suffering, as they so found.

 The jury was justified in arriving at a damage award for actual damages after consideration of all the underlying facts giving rise to false imprisonment, slander, and assault. Considering the foregoing, we cannot say that the evidence does not support the award of actual damages or that the amount awarded is manifestly unjust or excessive.[8] Our examination of the entire record does not reveal any hint that the verdict was a result of passion, prejudice or any other improper influence. Appellants' point of error six is overruled.

 Point of error seven alleges that the trial court erred in failing to grant Wal–Mart's Motion for Judgment Notwithstanding the Verdict against the entire punitive damages award because, allegedly, there is no evidence that Saenz was a managerial employee, that Wal–Mart ratified Saenz' actions, or that Wal–Mart was grossly negligent.

 In reviewing the contention that the trial court erred in refusing to grant a Motion for Judgment Notwithstanding the Verdict, this court must determine whether there is more than a scintilla of competent evidence to support the jury finding of a ratification. The trial court was authorized to grant the motion only if there is no evidence to support the finding. In reviewing the propriety of the trial court's refusal to grant said motion, we view the evidence in the light most favorable to the jury's findings, considering only the evidence and inferences which support them and rejecting the evidence and inferences contrary to these findings. *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.1986).

---

8. Contrary to the dissent's view of the appeal, appellants do not complain that the evidence does not support an award for mental anguish, but rather the complaint is that the award is excessive under the facts and point of error six argues for a remittitur. The duty of designating the particular error relied upon rests upon counsel for the appellant. *Holzapfel v. Brueggman*, 404 S.W.2d 916, 920 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.). A matter not raised by point on appeal is not reviewable. *Holt v. Purviance*, 347 S.W.2d 321, 326 (Tex.Civ. App.—Dallas 1961, writ ref'd n.r.e.). In determining whether damages are excessive this court applies only a factual sufficiency standard of review contrary to Wal–Mart's insistence that we review it under a legal sufficiency challenge. *See Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986).

■ The liability of a corporation for torts committed by its agents is governed by the same rules as those that determine the liability of any other principal or employer. *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 402–06 (1934).

■ And any recovery against a corporation for tort must be based on the wrongful act of an officer or agent, within the course or scope of his employment. *Rhodes, Inc. v. Duncan*, 623 S.W.2d 741, 743–44 (Tex. App.—Houston [1st Dist.] 1981, no writ). Thus, a corporation may be liable in exemplary damages for defamation [9] by one of its corporate officers, although his malicious conduct was neither authorized nor ratified by the corporation. *Texam Oil Corp. v. Poynor*, 436 S.W.2d 129, 130 (Tex.1968).

■ But a corporation is not liable for the acts of mere employees who are not officers or controlling agents representing the corporation in its corporate affairs, unless it is shown that the corporation authorized or subsequently adopted or ratified their acts, or was guilty of negligence in selecting and employing them. *King v. McGuff*, 149 Tex. 432, 234 S.W.2d 403, 405 (1950). The jury affirmatively answered questions on ratification and gross negligence. In the instant case, Odem contends that at least two of the four options enumerated in *Fisher* have been met. The record reflects that subsequent to the incident, David Perez, the acting store manager at the time of the incident, was transferred to a Wal–Mart store in Mexico. Odem would have us interpret this move to be a reward or a promotion. Likewise, the record reflects that Saenz was never suspended, counseled, reprimanded or fired following the incident. Odem also views this inaction on the part of Wal–Mart as ratification of the acts on the part of Saenz.

■ To constitute a wrongdoing by ratification, the original act must have been done in the interest of the person so ratifying or must have been intended to further some purpose of that person. *Billings v. Atkinson*, 471 S.W.2d 908, 911 (Tex.Civ.App.—Houston [1st Dist.] 1971), *rev'd on other grounds*, 489 S.W.2d 858 (1973). But, there can be no ratification of malicious acts of an agent where the principal had no knowledge of the existence of malice or of circumstances from which malice might be inferred. *Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 226 (1942), *cert. denied*, 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943).

The above recitation of facts is all of the evidence that in any way addresses authorization or ratification. It is clear that no member of management ever adopted or approved Saenz's conduct or that they even had knowledge of it until after the incident when Saenz voluntarily reported it to a department manager. Moreover, a meeting was held the following day which included management, Saenz, and Odem's mother, at which time management offered to discharge Saenz if that was what Odem desired. Such a request was never made, and Saenz continued to work for a number of months thereafter. In *Home Telephone & Electric Co. v. Branton*, 7 S.W.2d 627, 629 (Tex.Civ.App.—Eastland 1928), *aff'd*, 23 S.W.2d 294 (Tex. Comm'n App. 1930, holding approved), the court was not persuaded that a failure to discharge the servant constituted ratification of the servant's conduct by the master. We are not persuaded either.

There is nothing to indicate that Wal–Mart was ever placed on notice that retaining Saenz would somehow subject other customers to similar conduct, or that Wal–Mart was oblivious to rectifying the problem. In short, the evidence supporting the jury's affirmative answer to the inquiry about ratification is supported by proof amounting to no more than a scintilla of evidence, and therefore, will not support a finding of ratification. There is no evidence of prior authorization, and in fact no such finding was requested of the jury.

■ In the absence of proof of ratification the punitive damage award can not be sustained unless there be evidence that

---

9. For assault, *Southwestern Bell Tel. v. Wilson*, 768 S.W.2d 755, 759 (Tex.App.—Corpus Christi 1988 writ denied); for false imprisonment, *K-Mart No. 4195 v. Judge*, 515 S.W.2d 148, 153–54 (Tex.Civ.App.—Beaumont 1974, writ dism'd w.o.j.); and for negligence, *King v. McGuff, infra* 234 S.W.2d at 405.

Saenz was employed in a managerial capacity and was further acting in the course and scope of her employment at the time the acts complained of were committed. As to the latter, Wal–Mart entered into a stipulation that Saenz's conduct all occurred while in the course and scope of her employment. Nevertheless, a punitive damage award may not stand against Wal–Mart because there is no evidence that Saenz was anything other than a mere employee without managerial authority. Nor as we have noted, is there evidence of prior authorization or subsequent ratification. We sustain Wal–Mart's seventh point of error.

For the same reasons herein expressed we do not find it necessary to decide whether the jury's affirmative finding of gross negligence is supported by legally sufficient evidence as it would appear that the holding in *King v. McGuff, supra*, would also require a finding of authorization or ratification supported by sufficient probative evidence before an award of punitive damages could be sustained upon an underlying negligence, and gross negligence claim.[10]

Nor is it necessary to address Wal–Mart's remaining points of error alleging excessiveness of the punitive damages award and other complaints related to the punitive damage award, as these complaints are now moot.

Accordingly, we reform the trial court's judgment to allow Odem recovery only in the amount awarded by the jury for her actual damages.

As reformed, the judgment of the trial court is affirmed.

DUNCAN, Justice, concurring and dissenting.

Because I do not believe Brandy Odem presented legally sufficient evidence to justify an award of actual damages, I respectfully dissent from the majority's judgment insofar as it affirms the award of actual damages.[1]

The only element of actual damages that Odem pleaded or attempted to prove was "severe mental anguish." To establish her entitlement to damages for mental anguish, Odem was required to present either (1) "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine" or (2) other evidence that is legally and factually sufficient to establish " 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger' . . . ." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995) (quoting *J.B. Custom Design & Bldg. v. Clawson*, 794 S.W.2d 38, 43 (Tex. App.—Houston [1st Dist.] 1990, no writ)). Odem has failed to meet either test.

There is no direct evidence in this record of the nature, duration, or severity of Odem's mental anguish other than her own testimony and that of her friend, Tony Chapa, that Odem was "embarrassed" following the incident; even immediately after the incident, Odem did not indicate a change of mood or attitude. Embarrassment is not "severe mental anguish." Moreover, Odem's own testimony conclusively disproves "a substantial disruption" to her daily routine. By Odem's own admission, she never sought counseling as a result of the incident, she makes good grades in college and has no problem studying, and she leads a busy, active life.

Odem did testify that, as a result of the incident, she has a "phobia" of shopping.

---

10. *See also Fort Worth Elevators, Co. v. Russell*, 70 S.W.2d at 408.

1. I also disagree with the majority's analysis of Odem's causes of action. For instance, I would sustain Wal–Mart's first point of error, which complains that the evidence is legally and factually insufficient to establish a false imprisonment without legal authority because there is no evidence in this record of a "willful detention." *See, e.g., Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644–45 (Tex.1995) (requisites of detention by threat for purposes of false impris-

onment) (citing *Martinez v. Goodyear Tire & Rubber Co.*, 651 S.W.2d 18, 20 (Tex.App.—San Antonio 1983, no writ)); *see also, e.g., J.C. Penney Co. v. Romero*, 318 S.W.2d 129, 131 (Tex.Civ.App.—San Antonio 1958, writ ref'd n.r.e.); *Walker v. Martin*, 129 S.W.2d 1149, 1151 (Tex.Civ.App.—San Antonio 1939, no writ). However, because the lack of legally sufficient evidence of actual damages cuts across all of Odem's causes of action, it is on this basis that I dissent from the majority's judgment.

**532**

However, she also admitted that, within three months of the incident, she returned to this same Wal–Mart to shop; she returned to the same store two or three times the same spring in which the incident occurred; and she is sometimes employed on a temporary basis demonstrating hairspray in retail establishments. While I accept as true Odem's testimony that she is "scared" to shop and was "very embarrassed" as a result of the incident, I do not agree that this testimony is legally sufficient to establish "severe mental anguish." I would sustain Wal–Mart's sixth point of error and reverse the judgment below and render judgment in Wal–Mart's favor.

In response to this dissent, the majority states that "appellants do not complain that the evidence does not support an award for mental anguish, but rather the complaint is that the award is excessive and point of error six argues for a remittitur...." The majority then concludes that "[a] matter not raised by point on appeal is not reviewable." In the first place, a complaint that a damage award is excessive *is* a complaint that the evidence does not support the award. *See, e.g., Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986). That difference aside, I agree that Wal–Mart's sixth point of error, which complains that "[t]he jury's award of $10,000 in actual damages is excessive and remittitur is warranted," purports to raise only the factual sufficiency of the evidence to support the award of mental anguish damages. However, this technical deficiency is not dispositive, because the body of Wal–Mart's argument makes clear that Wal–Mart challenges both the legal and factual sufficiency of the evidence: "In this instance, Odem may have been embarrassed; but there is *no evidence* or *insufficient evidence* to establish she suffered grief, shame or humiliation of severity to recover for mental anguish...." Under these circumstances, Wal–Mart has adequately preserved its complaint that the evidence is legally insufficient to support the mental anguish award and its right to rendition. *See, e.g.,* John Hill Cayce, *Preserving*

*Error on Appeal: A Practical Guide for Civil Appeals in Texas,* 23 ST. MARY'S L.J. 11, 75–76 (1991) ("appellate courts will review an incorrectly phrased point if the other portions of the brief sufficiently apprise the court of the nature of the error") (citing *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 633 (Tex.1986)).

Because the record before this court does not contain legally sufficient evidence to justify an award of actual damages, I would reverse the trial court's judgment in its entirety and render judgment in Wal–Mart's favor.